# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-CV-01198-LA |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| A. O. SMITH CORPORATION, AJITA RAJENDRA, KEVIN WHEELER, and JOHN KITA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS CONSOLIDATED COMPLAINT

Date: January 24, 2020

FOLEY & LARDNER LLP
Bryan B. House, WI Bar No. 1022054
Andrew J. Wronski, WI Bar No. 1024029
Nathan D. Imfeld, WI Bar No. 1092934
777 East Wisconsin Street
Milwaukee, WI 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
bhouse@foley.com
awronski@foley.com
nimfeld@foley.com

LATHAM & WATKINS LLP
Sean M. Berkowitz (6209701 IL)
Nicholas J. Siciliano (6287387 IL)
Kathryn K. George (6306004 IL)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
sean.berkowitz@lw.com
nicholas.siciliano@lw.com
kathryn.george@lw.com

*Attorneys for Defendants A. O. Smith Corporation, Ajita Rajendra, Kevin Wheeler, and John Kita*

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND..................................................................................3

    A. AOS and the Individual Defendants .........................................................3

    B. AOS Develops a Strong Chinese Business, But Warns Financial Performance Could Be Impacted by Many Factors, Including the Chinese Economy ....................................................................................................4

    C. AOS Discloses Repeatedly That Elevated Channel Inventory in China Could Impact Future Sales....................................................................................4

    D. Short-Seller JCap Accuses AOS of Wrongdoing and Plaintiff Files Suit ..............6

III. ARGUMENT.........................................................................................................7

    A. Plaintiff Fails to Plead a Materially False or Misleading Statement or Omission ..............................................................................................9

        1. Plaintiff Fails to Allege Falsity with Particularity .....................................9

        2. Plaintiff's Selective Quotations Do Not Render Defendants' Statements False or Misleading ....................................................................17

        3. Many of the Challenged Statements Are Non-Actionable Assertions of Corporate Optimism ............................................................18

        4. Many of the Challenged Statements Are Protected by the Safe Harbor ...........................................................................................20

        5. Many of the Challenged Statements Are Non-Actionable Opinions.........21

    B. Plaintiff Fails to Plead a "Strong Inference" of Scienter .......................................22

        1. The CW Allegations Do Not Support Scienter..........................................23

        2. Individual Defendants' Stock Sales Do Not Support Scienter .................25

        3. Plaintiff's Other Allegations Do Not Support Scienter ............................26

    C. Plaintiff Fails to Plead Loss Causation ................................................................29

IV. CONCLUSION....................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abuhamdan v. Blyth, Inc.*,
  9 F. Supp. 3d 175 (D. Conn. 2014) ................................................................................. 19

*Alizadeh v. Tellabs, Inc.*,
  2015 WL 557249 (N.D. Ill. Feb. 9, 2015) ................................................................... 22, 24

*Anderson v. Abbott Labs.*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001), *aff'd sub nom.*, 269 F.3d 806 (7th Cir. 2001) ................ 19

*Anderson v. Spirit AeroSystems Holdings, Inc.*,
  827 F.3d 1229 (10th Cir. 2016) ....................................................................................... 28

*Barilli v. Sky Solar Holdings, Ltd.*,
  389 F. Supp. 3d 232 (S.D.N.Y. 2019) .............................................................................. 19

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
  2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) ................................................................... 30

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ............................................................................................. 8

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ........................................................................................... 15

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013) ....................................................................................... 30

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  65 F. Supp. 3d 840 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017) .................... 11, 23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
  632 F.3d 751 (1st Cir. 2011) ........................................................................................... 23

*City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
  711 F.3d 754 (7th Cir. 2013) ....................................................................................... 8, 23

*City of New Orleans Emps.' Ret. Sys. v. PrivateBancorp, Inc.*,
  2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) ................................................................. 16, 27

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ........................................................................... 19

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ................................................................. 25

Case 2:19-cv-01198-LA    Filed 01/24/20    Page 3 of 41    Document 23

*Copperstone v. TCSI Corp.*,
1999 WL 33295869 (N.D. Cal. Jan. 19, 1999) ........................................................... 19

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ..................................................................................... 27

*Curry v. Yelp, Inc.*,
875 F.3d 1219 (9th Cir. 2017) .................................................................................... 30

*Davis v. SPSS, Inc.*,
385 F. Supp. 2d 697 (N.D. Ill. 2005) ......................................................................... 16

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................. 7, 29

*Fulton Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*,
2010 WL 5095294 (E.D. Wis. Dec. 8, 2010), *aff'd*, 675 F.3d 1047 (7th Cir. 2012) . 9, 15, 16, 19

*Fulton Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*,
2010 WL 601364 (E.D. Wis. Feb. 18, 2010) ....................................................... 15, 26

*Glickenhaus & Co. v. Household Intern., Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................................... 29

*Greebel v. FTP Software, Inc.*,
194 F.3d 185 (1st Cir. 1999) ................................................................................ 10, 12

*Gregory v. ProNAi Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y. 2018), *aff'd*, 757 F. App'x 35 (2d Cir. 2018) ......... 19

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) ............................................................................... passim

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) ............................................................. 15

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
413 F. Supp. 2d 378 (E.D. Pa. 2005) ........................................................................ 24

*In re Bally Total Fitness Sec. Litig.*,
2006 WL 3714708 (N.D. Ill. July 12, 2006) ............................................................. 28

*In re Cable & Wireless, PLC*,
321 F. Supp. 2d 749 (E.D. Va. 2004) ........................................................................ 19

*In re CDNOW, Inc. Sec. Litig.*,
138 F. Supp. 2d 624 (E.D. Pa. 2001) ........................................................................ 20

*In re Guidant Corp. Sec. Litig.*,
536 F. Supp. 2d 913 (S.D. Ind. 2008) ................................................................. 16

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wis. 2009) ........................................................... passim

*In re Hertz Glob. Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018) ............................................................................... 25

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018) ...................... 16

*In re ICN Pharm., Inc., Sec. Litig.*,
299 F. Supp. 2d 1055 (C.D. Cal. 2004) ............................................................... 12

*In re Intrexon Corp. Sec. Litig.*,
2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ........................................................ 30

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) ................................................................ 29

*In re K-Tel Int'l Sec. Litig.*,
300 F.3d 881 (8th Cir. 2002) ............................................................................ 15

*In re Midway Games, Inc. Sec. Litig.*,
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ............................................................ 18, 19

*In re Nuverra Envtl. Solutions Sec. Litig.*,
2014 WL 6390322 (D. Ariz. Nov. 17, 2014) ........................................................ 14

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ............................................................................. 8

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ............................................................................. 30

*In re Redback Networks, Inc. Sec. Litig.*,
2007 WL 4259464 (N.D. Cal. Dec. 4, 2007), *aff'd*, 329 F. App'x 715 (9th Cir. 2009) ............ 11

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F. 3d 970 (9th Cir. 1999) ........................................................................... 22

*In re Solarcity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................ 19

*In re Spectrum Brands, Inc. Sec. Litig.*,
461 F. Supp. 2d 1297 (N.D. Ga. 2006) ........................................................... passim

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................................ 19, 21

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ........................................................................................ 25

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016) ............................................................................ 19

*In re XM Satellite Radio Holdings Sec. Litig.*,
  479 F. Supp. 2d 165 (D.D.C. 2007) .............................................................................. 10

*JP Morgan Chase & Co. v. Comm'r of Internal Revenue*,
  458 F.3d 564 (7th Cir. 2006) .......................................................................................... 16

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  2016 WL 6609210 (C.D. Cal. May 10, 2016) .............................................................. 19

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ........................................................................................ 21

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ...................................................................................... 8, 12

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016) .............................................................................. 9

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ............................................................................... 29, 30

*Mun. Emps.' Ret. Sys. v. Pier 1 Imps., Inc.*,
  935 F.3d 424 (5th Cir. 2019) ................................................................................. passim

*Nat'l Healthcare Affiliates, Inc. v. Liberty Mut. Ins. Co.*,
  2008 WL 11362258 (W.D.N.Y. July 2, 2008) .............................................................. 19

*Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enforcement Ret. Sys. v. IXIA*,
  2015 WL 1775221 (C.D. Cal. April 14, 2015) ............................................................. 26

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................................................ 22

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
  266 F. Supp. 3d 1154 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) ............ 28

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) .......................................................................................... 26

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   673 F. Supp. 2d 718 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012) .............................. 27

*Powell v. Idacorp, Inc.*,
   2006 WL 851116 (D. Idaho Mar. 29, 2006) .............................................................................. 29

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) ................................................................................ 22, 25, 27

*Rossy v. Merge Healthcare, Inc.*,
   169 F. Supp. 3d 774 (N.D. Ill. 2015) ..................................................................... 23, 25

*Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   2015 WL 3833849 (M.D. Pa. June 22, 2015) ........................................................... 20

*Societe Generale Sec. Servs., GmbH v. Caterpillar, Inc.*,
   2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) .................................................... 10, 21

*St. Lucie Cty. Fire Dist. Firefighters' Pension Tr. Fund v. Motorola, Inc.*,
   2011 WL 814932 (N.D. Ill. Feb. 28, 2011) ........................................................ 20, 21

*Teamsters Affiliates Pension Plan v. Walgreen Co.*,
   2010 WL 3894149 (N.D. Ill. Sept. 29, 2010) ........................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................................. 8

*Veal v. LendingClub Corp.*,
   2019 WL 5698072 (N.D. Cal. Nov. 4, 2019) ........................................... 11, 12, 17, 25

*W. Pa. Elec. Emps. Pension Tr. v. Plexus Corp.*,
   2009 WL 604276 (E.D. Wis. Mar. 6, 2009) ....................................................... 20, 21, 26

*Walker v. S.W.I.F.T. SCRL*,
   517 F. Supp. 2d 801 (E.D. Va. 2007) ...................................................................... 11

*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018) .......................................................... passim

*Xiaojiao Lu v. Align Tech., Inc.*,
   2019 WL 5579520 (N.D. Cal. Oct. 29, 2019) ..................................................... 17, 18

*Yates v. Mun. Mortg. & Equity, LLC*,
   744 F.3d 874 (4th Cir. 2014) ................................................................................. 24

*Ziolkowski v. Netflix, Inc.*,
   2018 WL 4587515 (N.D. Cal. Sept. 25, 2018) ......................................................... 19

Case 2:19-cv-01198-LA   Filed 01/24/20   Page 7 of 41   Document 23

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ...................................................................................... 8, 23

**STATUTES**

15 U.S.C. § 77z-2(c)(1)(A)(i) .......................................................................................... 20

15 U.S.C. § 78u-4(b) ........................................................................................................ 8

15 U.S.C. § 78u-5(c)(1) ............................................................................................ 20, 21

15 U.S.C. § 78u-5(i)(1) .................................................................................................. 20

15 USCS § 78j(b) ............................................................................................................. 7

**RULES**

17 C.F.R. § 229.101(c)(1)(vii) ....................................................................................... 13

17 C.F.R. § 240.10b-5 ...................................................................................................... 7

Fed. R. Civ. P. 9(b) ................................................................................................. 7, 8, 15

# GLOSSARY OF DEFINED TERMS

| | |
|---|---|
| ASC: | Accounting Standards Codification |
| App.: | Appendix A, listing the statements challenged by Plaintiff in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed November 22, 2019, Dkt. No. 21 |
| AOS: | A. O. Smith Corporation |
| CC: | Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed November 22, 2019, Dkt. No. 21 |
| CEO: | Chief Executive Officer |
| CFO: | Chief Financial Officer |
| Challenged Statements: | Defendants' statements Plaintiff challenges as false or misleading (CC ¶¶ 103-142) |
| Class Period: | February 17, 2017 through May 28, 2019 |
| Company: | A. O. Smith Corporation |
| CW or CWs: | Confidential Witness(es), as identified in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed November 22, 2019, Dkt. No. 21 |
| Defendants: | A. O. Smith Corporation, Ajita Rajendra, Kevin Wheeler, and John Kita |
| Individual Defendants: | Ajita Rajendra, Kevin Wheeler, and John Kita |
| Ex. or Exs.: | Exhibit(s), which are attached to the Declaration of Kathryn K. George, filed concurrently herewith |
| EY: | Ernst & Young LLP |
| GAAP: | Generally Accepted Accounting Principles |
| JCap: | J Capital Research |
| JCap Reports: | May 16, 2019 and May 29, 2019 Short-Seller Reports by J Capital Research, attached as Exhibits 33 and 35 to the Declaration of Kathryn K. George, filed concurrently herewith |
| Plaintiff: | City of Birmingham Retirement and Relief System |

Case 2:19-cv-01198-LA    Filed 01/24/20    Page 9 of 41    Document 23

| | |
|---|---|
| <u>PSLRA:</u> | The Private Securities Litigation Reform Act of 1995 |
| <u>Rule 9(b):</u> | Federal Rule of Civil Procedure 9(b) |
| <u>George Decl.:</u> | Declaration of Kathryn K. George, filed concurrently herewith |
| <u>UTP:</u> | Jiangsu Huiyuan Supply Chain Management Co., Ltd. |

Case 2:19-cv-01198-LA    Filed 01/24/20    Page 10 of 41    Document 23

## I. INTRODUCTION

When a short seller accuses a company of wrongdoing, securities-fraud lawsuits often follow—without regard to whether the self-serving assertions are right or wrong. This is just such a case. AOS, a 146-year-old U.S.-based company and one of the world's leading manufacturers of residential and commercial water heaters, boilers, and water-treatment products, has been doing business in China for over twenty years. As the Chinese economy and housing market boomed, AOS experienced significant growth. It has long warned, however, that the growth may not last forever. AOS told investors that many factors, including a decline in the Chinese economy or housing market, could cause actual results to differ materially from its expectations. That is exactly what happened in 2018, when AOS announced that Chinese sales likely would be negatively impacted by high channel-inventory levels believed to be the result of a significant decline in the housing market. Each quarter since, AOS has continued to update investors on its China struggles—including the impact of elevated channel inventory on sales.

Nearly a year after AOS publicly disclosed its channel-inventory challenges, short seller JCap published a report on May 16, 2019, speculating that AOS had masked its China sales slowdown through an improper "channel-stuffing" scheme with the assistance of a supply-chain partner named UTP. JCap offered no evidence that AOS engaged in any wrongdoing—only its opinion that AOS was overvalued due to the UTP relationship. JCap itself warned investors not to rely on the accuracy of its opinions, and admitted that it stood to reap significant gains if AOS's stock price declined. This action nevertheless followed less than two weeks later.

The CC challenges nearly seventy statements made over two years about AOS's China business. Plaintiff argues that these statements—no matter how accurate, vague, or forward looking—were false or misleading because they allegedly failed to admit that: (1) AOS was improperly channel stuffing; (2) the China business was "utterly dependent on a single customer,"

1

UTP; and (3) AOS violated GAAP by not disclosing certain "contingent liabilities." These allegations fail to meet the PSLRA's rigorous and heightened pleading standards.

To start, Plaintiff fails to allege that Defendants made a materially false or misleading statement of fact. For example, Plaintiff pleads no specific facts corroborating the purported channel-stuffing scheme, including the *products* AOS allegedly shipped in excess of demand, the *dates* of the transactions, the *customers* that unwittingly purchased products, the *time* when AOS recognized revenue on those sales, or the *impact* of the scheme on AOS's financial statements. Similarly, Plaintiff asserts that UTP is a "customer" responsible for over ten percent of AOS's consolidated revenues—but Plaintiff does not allege a single fact suggesting that AOS recognizes *any* revenue when it ships products to UTP's warehouses. In fact, Plaintiff concedes that UTP acts as a "supply-chain partner" that stores inventory for AOS. Likewise, Plaintiff argues that AOS violated GAAP by failing to disclose loan contingencies associated with certain customer purchases. But AOS has not restated its financial statements, and GAAP encompasses a range of reasonable treatments, leaving the decision to management. Disagreement with AOS's accounting judgment with respect to disclosure is not a proper basis for a securities-fraud claim.

Even assuming Plaintiff properly supported its falsity claims (it has not), the Challenged Statements are not actionable because they express generic optimism about AOS's business, are forward-looking predictions protected by the PSLRA's safe harbor, merely state the speaker's opinions, or all three. Plaintiff has not met its burden to plead falsity with particularity.

Plaintiff's scienter allegations are equally deficient. Although the CC relies on seven confidential witnesses, only one worked at AOS for even a fraction of the Class Period, and none suggests that AOS engaged in improper conduct. More importantly, the CWs had no contact with the Individual Defendants, and thus cannot support a strong inference of scienter. Plaintiff also

contends that because of the Individual Defendants' positions and access to information about China, they "clearly knew" about the alleged misconduct. This is not enough. To establish an actionable inference of scienter, Plaintiff must allege specific facts that the Individual Defendants were aware of (or were deliberately reckless regarding) the alleged wrongdoing. The CC contains none of this. Plaintiff also points to the Individual Defendants' stock sales, but these occurred over the course of Plaintiff's unusually long Class Period, and well before the alleged corrective disclosures—major mitigating factors against scienter, particularly considering the Individual Defendants retained the vast majority of their shares.

Finally, Plaintiff has not adequately alleged loss causation because it has not identified a corrective disclosure that revealed any relevant truth. Plaintiff points to AOS's "abysmal" financial performance in the first quarter of 2019. But AOS already had informed investors that it expected poor performance in the quarter—the confirmation cannot be a corrective disclosure. Plaintiff also points to the JCap Reports, which relied on public information and conjecture to criticize the Company. Negative characterizations of public facts are not corrective. At most, they reveal the author's opinions, not the "truth" about supposed fraud. The CC should be dismissed.

## II. FACTUAL BACKGROUND

### A. <u>AOS and the Individual Defendants</u>

AOS is a Milwaukee-based manufacturer and marketer of comprehensive lines of residential and commercial gas, gas tankless, and electric water heaters, as well as water-treatment products. CC ¶ 15. Founded in 1874, AOS is the largest manufacturer and marketer of water heaters in North America and sells products in several countries, including China. *Id.* ¶ 26.

Defendant Rajendra joined AOS in 2005. *Id.* ¶ 16. He was named President and CEO in 2013, and also became Chairman in 2014. *Id.* Rajendra has served as AOS's Executive Chairman since September 2018. *Id.* Defendant Wheeler began working at AOS in 1994 as a regional sales

manager. *Id.* ¶ 17. He has served in several roles during his twenty-five years at the Company, including Vice President – International from 2004 to 2007. *Id.* Wheeler has been AOS's President and CEO since September 2018. *Id.* Defendant Kita joined the Company in 1988 as Assistant Treasurer. CC ¶ 18. He held that title until 1994, when he was promoted to Treasurer and Controller. *Id.* Kita became Vice President, Treasurer and Controller in 1996, and then Senior Vice President, Corporate Finance and Controller in 2006. *Id.* In 2011, Kita was named AOS's CFO—a position he held until his retirement in May 2019. *Id.*

**B.      AOS Develops a Strong Chinese Business, But Warns Financial Performance Could Be Impacted by Many Factors, Including the Chinese Economy**

AOS has operated in China for over twenty years. Ex. 1 at 4. By early 2017, AOS sold its water heaters, water treatment, and air-purification products in thousands of Chinese retail outlets. *Id.* China sales grew to nearly $1 billion annually in 2016—representing approximately thirty percent of AOS's consolidated revenues. CC ¶ 29. Sales growth averaged approximately eighteen percent in Chinese currency between 2014-2016. Ex. 1 at 6. In early 2017, AOS projected its yearly China sales to increase by approximately fifteen percent. *Id.* AOS warned, however, that its China business was subject to many risks, including economic instability, tariffs, and other trade restrictions. *Id.* AOS also cautioned that if the Chinese economy slowed, or consumer spending declined, AOS's financial performance could be adversely affected. *Id.* at 23.

**C.      AOS Discloses Repeatedly That Elevated Channel Inventory in China Could Impact Future Sales**

Each quarter, AOS updated the market on its performance. For example, in April 2017, AOS reported that China sales grew twenty-seven percent in local currency for the first quarter, driven by continued strong demand for products and a "pre-buy" in advance of a price increase. Ex. 3 at 6. AOS told investors that this pre-buy—*i.e.*, customers purchasing product in advance to sell later—would "negatively impact the next couple of quarters' sales." *Id.* AOS again noted that

4

its statements were forward looking, and that actual results could differ materially depending on, among other reasons, the Chinese economy. *Id.* at 1; Ex. 5 at 21.

In January 2018, AOS reported that China sales increased eighteen percent in local currency in 2017, surpassing its expectations. Ex. 14 at 8. AOS explained that it overperformed in the fourth quarter of 2017 because (1) customers ordered more to "qualify for volume incentives"; and (2) e-commerce customers created a "larger-than-expected inventory build" for the holiday online-shopping days. *Id.* AOS predicted that the stronger performance in 2017 would negatively affect 2018. *Id.* Sure enough, although China sales grew in the first quarter, AOS reduced its revenue guidance for the year. *Id.*; Ex. 17 at 5-6. AOS noted that the reduction stemmed from the earlier "pre-buy" and a decline in the air-purifier market. *Id.* at 6.

AOS communicated more about elevated channel-inventory levels beginning in July 2018. The Company stated—again accompanying its predictions with cautionary disclaimers—that sales in the second half of 2018 "are expected to be negatively impacted . . . by high channel inventory levels," believed to be the result of a significant decline in the China housing market. Ex. 20 at 6. In October 2018, AOS predicted that inventory levels would remain elevated into 2019 due to "slower housing growth" and "increasing consumer anxiety surrounding" U.S.-China trade issues. Ex. 22 at 6. In response to a question regarding the timing of inventory destocking, Wheeler answered, "that primarily will be driven by the economy and its recovery." *Id.* at 10.

But the Chinese economy did not improve. In January 2019, AOS announced that its China sales decreased by three percent in the fourth quarter of 2018 "as the Chinese economy continued to weaken." Ex. 25 at 5. AOS's announced outlook for 2019 was even worse. The Company publicly forecasted a Chinese sales decline of eight to eleven percent in local currency for the year (three to six percent plus five percent due to announced inventory build in 2018), and

5

approximately twenty percent in the first quarter due to customer inventory build. *Id.* at 6-7. Analysts asked when AOS would "flush this channel inventory out." *Id.* at 8. Kita did not expect to do so quickly because "we're having a weak quarter." *Id.* In its Form 10-K filed a few weeks later, AOS again disclosed that deterioration "in the Chinese economy could adversely affect" its financial performance. Ex. 27 at 6.

First-quarter results, announced on April 30, 2019, closely tracked AOS's predictions— China sales declined eighteen percent, "primarily related to channel inventory build." Ex. 29 at 5. AOS reduced its China guidance, projecting an eleven- to thirteen-percent sales decline for the year (six to eight percent plus five percent due to announced inventory build in 2018). *Id.* at 7.

### D.  Short-Seller JCap Accuses AOS of Wrongdoing and Plaintiff Files Suit

A few weeks later, and after establishing a short position in AOS's stock, JCap published a report speculating that AOS had engaged in improper "channel stuffing" with the assistance of a "service partner" named UTP. Ex. 33 at 2, 10. After noting that AOS's relationship with UTP was "public knowledge in China," JCap theorized that UTP "helps AOS post targeted sales volumes by using liberal credit for distributors and high levels of inventory." *Id.* at 2, 8. JCap offered no proof of misconduct. For example, although it stated that "UTP is obliged to take any inventory requested by AOS and cannot return" it, JCap never alleged that AOS recognized revenue when it shipped products to UTP. *Id.* at 10. On the contrary, JCap said nothing about AOS's revenue-recognition practices, and later conceded that UTP "manages warehousing for AOS." *Id.* at 11. JCap claimed to value AOS shares at $22.68—more than fifty percent lower than the then-current price. *Id.* at 65. JCap carefully crafted its sensational claims as opinions, using hedging phrases like "we believe," "we suspect," and "we speculate." Ex. 33 at 2, 38-39.

AOS denied JCap's "inaccurate, unfounded and misleading allegations." Ex. 34 at 1. In two separate disclosures, AOS noted that, like many companies in China, it works with UTP as a

6

"supply-chain service provider." *Id.*; Ex. 36 at 2. AOS stated that UTP provides order-entry, warehousing, and logistics support in connection with approximately seventy percent of the Company's sales in China—*e.g.*, UTP manages AOS's distributor orders by purchasing product and then shipping it to the distributors. Ex. 34 at 1; Ex. 36 at 2. At no point did AOS state that UTP is a *customer* that comprises 70% of China sales. AOS noted that all revenue associated with UTP was appropriately recognized in accordance with GAAP, and that its financial statements are audited by EY. Ex. 36 at 2. AOS also stated that UTP provides asset-backed financing to certain of AOS's distributors in China to facilitate their working capital needs. *Id.* AOS explained that UTP has collateralized lending facilities in place with multiple Chinese banks under which AOS has agreed to repurchase inventory if both requested by the bank and certain defined conditions are met. *Id.* But AOS made clear that (1) it has never repurchased any inventory under these arrangements; (2) the portion of the financing subject to the conditions that would allow banks to request repurchase is not material (approximately $2.5 million, or .08% of annual sales); and (3) in any event, UTP is required to indemnify AOS for any losses associated with an inventory repurchase. *Id.*; Ex. 27 at 56. Although AOS's share price fell 6.3% and 4.3%, respectively, on the two days when JCap released reports (CC ¶¶ 164-67), the stock has risen since—and is 100% higher than JCap's prediction.

## III. ARGUMENT

Plaintiff's claims are subject to the exacting and heightened pleading requirements of Rule 9(b) and the PSLRA.[1]  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319

---

[1] To assert a claim under Section 10(b) and Rule 10b-5, Plaintiff must adequately allege: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

7

(2007); *City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 757 (7th Cir. 2013) (plaintiffs in securities class actions face a "heavy" pleading burden).  Rule 9(b) requires Plaintiff to "state with particularity" the "circumstances constituting fraud or mistake," meaning Plaintiff must describe "the who, what, when, where, and how" of the fraud.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).  The PSLRA is even more demanding and requires Plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief," to "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

The PSLRA also requires Plaintiff to state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that **each** Defendant acted with "an intent to deceive, manipulate, or defraud."  *Tellabs*, 551 U.S. at 319; *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756 (7th Cir. 2007).  To plead scienter, Plaintiff must allege that the Defendants made false or misleading statements either intentionally or with deliberate recklessness.  *See* 15 U.S.C. § 78u-4(b)(2); *Higginbotham*, 495 F.3d at 756.  The recklessness standard is "much closer to one of intent" (*In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014)); each statement must constitute an "extreme departure from the standards of ordinary care" that presents a danger of misleading "either known to the defendant or so obvious that the defendant must have been aware of it" (*Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008)).  A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.  *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 994 (E.D. Wis. 2009) ("*H-D*").  This means the court must consider *all* reasonable inferences, including inferences unfavorable to Plaintiff.  *See*

*Fulton Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 5095294, at *3 (E.D. Wis. Dec. 8, 2010).

Plaintiff's claims[2] fail to meet these exacting standards. The CC should be dismissed.

### A. Plaintiff Fails to Plead a Materially False or Misleading Statement or Omission

#### 1. Plaintiff Fails to Allege Falsity with Particularity

Plaintiff's claims rest on three core premises: (1) AOS engaged in improper channel-stuffing in China; (2) AOS's China business was "utterly dependent on a single customer," UTP; and (3) AOS violated GAAP and "applicable accounting standards" by not disclosing contingent liabilities associated with sales to certain Chinese distributors. CC ¶¶ 100-02. Plaintiff argues that nearly seventy of AOS's statements were misleading because they failed to disclose these "facts." *See* App. But the CC, at most, sets forth "a hypothesis" that AOS engaged in this misconduct. *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1307 (N.D. Ga. 2006). Plaintiff fails to support its three theories with particularized facts, and the CC should be dismissed on this ground alone. *See Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1148 (C.D. Cal. 2018) (plaintiff's allegations were "speculation made in hindsight").

#### a. Plaintiff Fails to Plead an Improper Channel-Stuffing Scheme

Plaintiff first argues that AOS used an "extensive channel stuffing scheme" to (1) manufacture fake demand and sales for the Company's products in China; and (2) "artificially inflate" financial performance. CC ¶ 106. Where a securities-fraud claim relies on the alleged failure to disclose improper conduct, Plaintiff must plausibly allege that the improper conduct actually took place. *See, e.g.*, *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 578-79 (S.D.N.Y. 2016). This is because securities laws do not impose a duty upon companies to

---

[2] Because Plaintiff "fail[s] to state a claim under § 10(b) or Rule 10b–5 . . . there can be no liability under § 20(a)." *H-D*, 660 F. Supp. 2d at 1003-04.

"confess to uncharged, unadjudicated claims of wrongdoing." *Societe Generale Sec. Servs., GmbH v. Caterpillar, Inc.*, 2018 WL 4616356, at *6 (N.D. Ill. Sept. 26, 2018). To meet the PSLRA's heightened pleading standards on channel-stuffing claims (which are "disfavored," (*see Mattel*, 321 F. Supp. 3d at 1147)), Plaintiff must "plead with particularity facts sufficient to allege not only that the alleged channel-stuffing occurred, but also that it was not legitimate." *Spectrum*, 461 F. Supp. 2d. at 1309. Plaintiff has done neither.

Plaintiff does not allege "sufficient corroborating details" about the purported scheme, including "'specific transactions, specific shipments, specific customers, specific times, or specific dollar amounts." *Mattel*, 321 F. Supp. 3d at 1147-48; *see also, e.g.*, *H-D*, 660 F. Supp. 2d at 989-90. Missing from the CC is any particularized fact specifying (1) *what* products AOS allegedly shipped in excess of demand; (2) *when* customers ordered them; (3) *when* AOS shipped them; (3) *when* AOS recognized revenue on the sales; (4) *which (and how many)* customers were forced to take inventory they did not otherwise want; or (5) *whether (and by how much)* the scheme artificially inflated AOS's revenues and earnings. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 204 (1st Cir. 1999) (noting "complete absence" of particulars such as "the approximate amount by which revenues and earnings were overstated," "the products involved," "the dates of any of the transactions," or "the identities of any of the customers" and "employees involved"); *Spectrum*, 461 F. Supp. 2d. at 1309 (no allegations regarding which clients ordered products, when ordered, when delivered, what quantities, and in response to which incentives). Plaintiff does not even allege that AOS's reported financial figures—which were audited by EY and have not been restated—were false. *See*, *e.g.*, CC ¶¶ 103, 107-08, 110, 113; Ex. 34 at 2; *In re XM Satellite Radio Holdings Sec. Litig.*, 479 F. Supp. 2d 165, 178 n.11 (D.D.C. 2007) ("accurate reports of historical financial performance [] are not actionable"); *In re Redback Networks, Inc. Sec. Litig.*, 2007 WL

4259464, at *3 (N.D. Cal. Dec. 4, 2007) (same). Nor does Plaintiff claim that AOS's revenue-recognition practices were improper. *See Spectrum*, 461 F. Supp. 2d at 1308.

At most, Plaintiff points to the observations of (1) an unnamed JCap[3] source, who stated that "[w]e hear . . . many distributors . . . are breaking contracts, because the inventory pressure is so great" (CC ¶ 47); (2) another unnamed JCap source, who noted that AOS provided "higher rebates on sales volumes" and directed "UTP to reduce interest rates" on working-capital loans (*id.*); and (3) a single CW, who reported that "overstocking of A. O. Smith products was common" because AOS "sets up the sales goal for its distributors" (*id.* ¶ 96). These allegations fall far short of establishing a channel-stuffing scheme. The hearsay lifted from the JCap Report must be disregarded: Plaintiff "may not rely on a third party's investigation to satisfy their Rule 11 obligations." *Veal v. LendingClub Corp.*, 2019 WL 5698072, at *16 (N.D. Cal. Nov. 4, 2019); *see also Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806-07 (E.D. Va. 2007) (reliance on article's anonymous sources "cannot relieve plaintiffs of their important Rule 11 obligation"). More importantly, all of the allegations are exceedingly vague, and do not illuminate "whether the alleged channel-stuffing practices were widespread or anecdotal, whether they involved hundreds rather than millions of dollars['] worth of product, or how the alleged channel-stuffing transactions at the end of the quarters differed from sales made at other times during the quarter." *Spectrum*, 461 F. Supp. 2d at 1310-11; *see also Mattel*, 321 F. Supp. 3d at 1147.

---

[3] JCap conceded it had no actual proof of improper channel stuffing by carefully phrasing its claims as opinions. *See, e.g.*, Ex. 33 at 9 ("*We believe* AOS has been using the UTP relationship since 2015 to achieve growth in an increasingly difficult market by pushing out more credit and incentive payments to distributors.") (emphasis added); *id.* at 21 ("*We believe* that AOS is hiding declining sales in China via its undisclosed relationship with UTP.") (emphasis added). The CC removes JCap's hedging language and presents these opinions as facts. But Plaintiff cannot meet its burden to plead particularized *facts* by parroting JCap's *opinions*. *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 852-53 (N.D. Cal. 2014) (plaintiff's opinion is "not a substitute for facts").

This highlights another fatal flaw in Plaintiff's allegations: they "do not adequately support the inference that Defendants' alleged 'channel stuffing' scheme was improper." *Mattel*, 321 F. Supp. 3d at 1147. Unlike "altering company documents, there may be any number of legitimate reasons for attempting to achieve sales earlier." *Greebel*, 194 F.3d at 203; *see also H-D*, 660 F. Supp. 2d at 985 ("As stated by the Seventh Circuit, '[a] certain amount of channel stuffing could be innocent[.]'") (quoting *Tellabs*, 513 F.3d at 709). None of Plaintiff's CWs states (or even suggests) that AOS did anything improper when selling products in China.

To this end, AOS repeatedly told investors when elevated channel-inventory levels impacted sales—whether due to "pre-buys" in advance of high-demand seasons or an announced price increase. *See* Ex. 3 at 6; Ex. 14 at 8; Ex. 20 at 11; *In re ICN Pharm., Inc., Sec. Litig.*, 299 F. Supp. 2d 1055, 1061-62 (C.D. Cal. 2004) (plaintiffs' allegations were consistent with the inherent seasonality of the product in question). And when the Chinese housing market plummeted, AOS warned that sales would be impacted by the elevated channel inventory. *See, e.g.,* Ex. 20 at 6. AOS thus did not conceal facts about Chinese channel inventory; it consistently disclosed those facts throughout the Class Period, undermining any inference that the Company was engaging in a surreptitious channel-stuffing scheme. *See Veal*, 2019 WL 5698072, at *14 (dismissing action where filings contained "abundant and specific disclosures regarding the risks facing the company"). The CC's central theme thus rests on a false premise—not only that a channel-stuffing scheme existed, but also that it was nefarious. *See Spectrum*, 461 F. Supp. 2d. at 1311 ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" are insufficient). The CC should be dismissed on this ground alone.

b. **Plaintiff Fails to Plead That UTP Is a Material "Customer"**

Plaintiff also claims that AOS had a duty to disclose UTP under Item 101(c) of Regulation S-K, which directs companies, when filing Forms 10-K, to disclose "customers" that account for

10% or more of consolidated revenues *and* the loss of which would have a "material adverse effect" on the business. 17 C.F.R. § 229.101(c)(1)(vii); CC ¶ 100. This argument fails because it "assumes its conclusion[s]": (1) UTP is a "customer" that accounts for more than 10% of AOS's consolidated revenues (2) the loss of which would cause a "material adverse effect." *Mun. Emps.' Ret. Sys. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 436 (5th Cir. 2019). Plaintiff does not allege particularized facts demonstrating either.

Plaintiff litters the CC with vague references to UTP's alleged role in the sales process—that UTP is "responsible for at least 50%, and up to 75%, of the Company's" China sales, or "is involved in almost every aspect of" AOS China's business, or "accounted for approximately 24.8% of the Company's consolidated revenues for 2016." CC ¶¶ 21, 35, 102(a), 104. Nowhere does Plaintiff identify facts establishing that UTP was an actual AOS customer that purchased products comprising anywhere close to 10% of the Company's consolidated revenues. On the contrary, Plaintiff concedes that UTP is a "supply-chain partner" that managed AOS's warehousing, procurement, and distribution services. *Id.* ¶¶ 31-32, 44. Even JCap did not allege in its May 16, 2019 report that UTP's role was primarily that of a customer; it suggested instead that UTP was more akin to a "service partner simply warehousing inventory for the distributors." Ex. 33 at 10. Plaintiff cribs the JCap allegation that UTP was "obliged to take any inventory requested by AOS and cannot return" it. CC ¶ 64. But this says nothing about whether AOS recognizes revenue when it sends goods to UTP (thereby suggesting a customer relationship)—and Plaintiff does not allege a single fact regarding *when* (or even *if*) AOS recognizes revenue upon shipment to UTP. Just the opposite—if Plaintiff is correct and UTP warehoused inventory, it would make complete sense that UTP stored AOS's products until an actual customer placed an order.

The most Plaintiff alleges is that UTP served not just as a supply-chain partner but also a

13

distributor for the Shanghai and Shenzhen markets.  CC ¶ 32.  Plaintiff does not allege that these markets accounted for 10% or more of AOS's consolidated revenues.  Nor does Plaintiff contend that the loss of this revenue would have a material adverse effect on AOS's business.  Claims based on the alleged failure to disclose UTP as a "customer" are conclusory and should be dismissed.  *See Pier 1*, 935 F.3d at 435-36.

Plaintiff's claim that *all* of the Challenged Statements were false and misleading because AOS "heavily promoted [its] 'extensive' distribution network in China" while concealing that "between 50-75% of the Company's China business relied on a single distributor, UTP" fails for similar reasons.  CC ¶ 102(a).  Plaintiff never explains what "relied on" means, nor does it allege facts demonstrating that AOS's distribution network would be materially weakened if UTP stopped serving as a supply-chain partner.

The UTP allegations also fail for multiple other reasons.  First, the relationship was not hidden.  As JCap itself noted, it "is widely known in the industry."  Ex. 33 at 8.  The securities laws "do not require firms to 'disclose' information that is already in the public domain."  *Higginbotham*, 495 F.3d at 759.  Second, Plaintiff does not explain how AOS's decision to work with a supply-chain partner even relates to every Challenged Statement, "let alone why it renders each statement misleading."  *In re Nuverra Envtl. Sols. Sec. Litig.*, 2014 WL 6390322, at *4 (D. Ariz. Nov. 17, 2014); *see also H-D*, 660 F. Supp. 2d at 984 (company not required "to disclose every tangentially related fact that might interest investors").  Plaintiff thus has failed to "draw a connection between each individual disclosure and the specific facts" supporting its assertion that the statements were false or misleading.  *Mattel*, 321 F. Supp. 3d at 1146.  Third, rather than plead particularized facts demonstrating that AOS's statements were false, Plaintiff argues, in effect, that by not mentioning UTP, AOS failed to provide a complete picture of the facts.  *E.g.*, CC ¶¶ 100-

02.  But "a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."  *Fulton Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 601364, at \*17 (E.D. Wis. Feb. 18, 2010).  Plaintiff must specify the reason why the statements were "misleading or untrue, not simply why the statements were [allegedly] incomplete."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also MGIC*, 2010 WL 5095294, at \*9.  The CC does not do this and should be dismissed.

**c.  Plaintiff Fails to Plead That AOS Violated GAAP**

Plaintiff also argues that *all* of AOS's Class-Period Forms 10-Q and 10-K violated GAAP—specifically ASC 450-20-50—by failing to disclose that the Company "guaranteed loans to customers through UTP involving many millions of dollars of inventory 'repurchase' obligations."  CC ¶ 101.  This argument fails.

To begin, AOS has not restated its financial statements nor admitted to any GAAP violations.  Plaintiff's claim, therefore, "amounts to mere disagreement with [the Company's] accounting judgment," which "[c]ourts have routinely rejected" as a basis for securities fraud.  *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at \*7 (E.D.N.Y. Aug. 6, 2019); *see also H-D*, 660 F. Supp. 2d at 989-90 (allegations that "accounting practices resulted in a false report of the company's earnings is not a sufficiently particular claim of misrepresentation").

Furthermore, conclusory assertions that AOS violated GAAP, "standing alone, do not satisfy the particularity requirement of Rule 9(b)."  *In re K-Tel Int'l Sec. Litig.*, 300 F.3d 881, 890 (8th Cir. 2002).  Plaintiff must allege (1) "the particular financial transaction which caused the alleged misstatement"; (2) the "amount of the overstatement and the effect it had on the company's earnings"; (3) the "applicable accounting principle(s) applied by the company and why they were improperly applied"; and (4) the "defendant was responsible for calculating and/or disseminating the allegedly incorrect financial information."  *H-D*, 660 F. Supp. 2d at 989; *see also Davis v.*

15

*SPSS, Inc.*, 385 F. Supp. 2d 697, 710 (N.D. Ill. 2005) (alleged GAAP violations insufficiently pled where "complaint does not provide any factual allegations concerning the financial impact of these practices"). Plaintiff alleges none of this with particularity. It does not even identify a single statement in AOS's filings that was rendered misleading by the alleged failure to disclose the immaterial financing arrangements. *See City of New Orleans Emps.' Ret. Sys. v. PrivateBancorp, Inc.*, 2011 WL 5374095, *10 (N.D. Ill. Nov. 3, 2011) (allegations that entire documents were false for failing to disclose "high-risk loans" are "conclusory" and "insufficient"); *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 927 n.12 (S.D. Ind. 2008) (dismissing where plaintiffs did not identify "precisely what statements in a document" were false or misleading).

Nor could it. GAAP is "far from" a "canonical set of rules," and "tolerate[s] a range of reasonable treatments, leaving the choice . . . to management." *JP Morgan Chase & Co. v. Comm'r of Internal Revenue*, 458 F.3d 564, 569 (7th Cir. 2006); *MGIC*, 2010 WL 5095294, at *5. This is particularly true here. ASC 450-20—the accounting standard that Plaintiff identifies—calls for disclosure of loss contingencies where it is "probable" that a liability had been incurred at the date of the financial statements *and* the amount of that liability can be "reasonably estimated," or where there is "at least a reasonable possibility" that a loss may have been incurred. ASC 450-20-25-2, 50-3. Plaintiff does not allege either scenario, and in any event, "[t]hese are not the kind of fixed rules that would qualify as objective standards." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017).

Plaintiff does not allege particularized facts that the Individual Defendants played any role in assessing whether the treatment of the financing arrangements complied with GAAP, much less that they *knew* the arrangements required disclosure and chose not to do so. *See id.* at 12. This is fatal to Plaintiff's claim. *See PrivateBancorp*, 2011 WL 5374095, at *4 ("The complaint does not

plead facts demonstrating tha[t] any particular collectability or reserve decisions were not reasonably based and believed in good faith at the time."). Plaintiff instead points to a statement *after* the Class Period, where AOS discussed financing arrangements with multiple Chinese banks under which the Company has agreed to repurchase inventory if "both requested by the bank and certain defined conditions are met." CC ¶ 87. But this is not evidence that AOS's Class-Period statements were false or misleading—adding a disclosure "does not show that earlier ones were recognized as deficient." *Higginbotham*, 495 F.3d at 760. Indeed, if "the law viewed a company's editing . . . of language from an SEC filing as a tacit admission that the language was false when made," no company ever would change its disclosures. *Veal*, 2019 WL 5698072, at *20. In that same statement, AOS disclosed that: (1) UTP must indemnify AOS for any losses due to inventory repurchase; (2) AOS has never received an inventory repurchase request under the agreements; and (3) the portion of the financing subject to the conditions that would allow banks to request repurchase is financially immaterial. *See* Ex. 36 at 2. Claims related to alleged GAAP violations should be dismissed.

### 2. Plaintiff's Selective Quotations Do Not Render Defendants' Statements False or Misleading

Plaintiff also selectively quotes certain statements and seeks inferences that are belied by the full text. *See Xiaojiao Lu v. Align Tech., Inc.*, 2019 WL 5579520, at *6 (N.D. Cal. Oct. 29, 2019); *see, e.g.*, App. Nos. 40, 42-43, 47, 53. For example, Plaintiff notes that during a July 25, 2018 investor call, an analyst asked whether AOS's channel inventory situation was "unique" to AOS or instead shared by its competitors. CC ¶ 127. Plaintiff alleges that Defendant Rajendra "*reassured investors* that 'the slowdown has to be hitting everybody,'" and Defendant Kita stated, "you have to assume everybody's kind of in the same [boat]." *Id.* (emphasis added). But Plaintiff omitted critical parts of both answers that change their meaning. In response to the question,

Rajendra actually said, "*[w]e don't know.  We don't really have any data that can say what the other competitors are like in terms of inventories*.  But the slowdown has to be hitting everybody." App. No. 42 (emphasis added).  Kita added:  "We don't see the numbers from a share standpoint haven't moved much.  So as Ajita said, *we don't know*, but you have to assume everybody's kind of in the same." *Id.* at 43 (emphasis added).

Plaintiff employs a similar approach when describing a later earnings call.  Plaintiff says that AOS tried to suggest the size of channel inventory was not unusual, quoting Defendant Wheeler's statement that "'days [of inventory] on hand' in China declined from the second quarter to the third quarter." CC ¶ 130.  But after noting the inventory decline, Wheeler added, "*that's really not a great measurement considering the volatility, we used the – a 90-day forward forecast.  And when you have some seasonality, that could be misleading*."  App. No. 47.

By cherry picking portions of Defendants' statements and ignoring others, Plaintiff "asks the Court to make inferences contradicted by the statements viewed properly as a whole."  *Align Tech.*, 2019 WL 5579520, at *6.  This tactic cannot establish falsity under the PSLRA.  *See id.* ("To allege falsity . . . Plaintiff 'must account for the entirety of [the statements] on which they rely, and not simply invoke selective quoting to make their claims.'"); *Teamsters Affiliates Pension Plan v. Walgreen Co.*, 2010 WL 3894149, at *5-6 (N.D. Ill. Sept. 29, 2010) (statement not misleading when read with "[t]he sentence immediately preceding the one at issue").

### 3. Many of the Challenged Statements Are Non-Actionable Assertions of Corporate Optimism

Plaintiff challenges numerous "general, optimistic statements" that are not actionable under the federal securities laws.  *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004); *see, e.g.*, App. Nos. 1, 3-22, 24-28, 30-31, 33-36, 39-41, 45-46, 48-49, 52, 56-58, 62-64.  These statements are "not capable of being objectively verified," and are considered

18

"puffery" upon which no reasonable investor would rely. *Midway Games*, 332 F. Supp. 2d at 1164; *see also MGIC*, 2010 WL 5095294, at \*3. Indeed, many of the Challenged Statements are nearly identical to those found non-actionable in previous cases:

| Challenged Statements | Statements Found to be Non-Actionable in Prior Cases |
|---|---|
| **Market Positioning and Advantage:** AOS had a "clear market advantage," "extensive distribution and service network," "broad distribution channel," "strong growth," and AOS's "growth drivers are intact." *See*, *e.g.*, App. Nos. 3-6, 8-11 16-18, 24-26, 30, 45, 48-49, 56-58, 62-64 | • company had a "competitive advantage" (*Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 398-99 (S.D.N.Y. 2018); *In re Cable & Wireless, PLC*, 321 F. Supp. 2d 749, 768 (E.D. Va. 2004)); <br>• company would "build our distribution channels" (*Knox v. Yingli Green Energy Holding Co. Ltd.*, 2016 WL 6609210, at \*16 (C.D. Cal. May 10, 2016)); <br>• company "expanded distribution channels" (*Copperstone v. TCSI Corp.*, 1999 WL 33295869, at \*12 (N.D. Cal. Jan. 19, 1999)); <br>• company had "broad geographic reach" (*Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 259-60 (S.D.N.Y. 2019)); <br>• company had "extensive experience" (*Nat'l Healthcare Affiliates, Inc. v. Liberty Mut. Ins. Co.*, 2008 WL 11362258, at \*4 (W.D.N.Y. July 2, 2008)) <br>• company would have "strong growth" (*In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 994-95 (N.D. Cal. 2017); *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 191 (D. Conn. 2014)); <br>• company's "growth drivers give us . . . confidence" (*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012)). |
| **Progress and Performance**: AOS experienced "record" sales, "higher demand," "strong demand," "solid demand," "continued demand," and believed "replacement demand remains substantial" with the inventory build having a "minimal" impact. App. Nos. 1, 6-8, 12-15, 19-22, 27-28, 30-31, 33-36, 39, 52. | • company reported "record sales" for the previous quarter (*Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 909 (N.D. Ill. 2001)); <br>• company experienced "strong demand" and results were "better than expected" (*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1076-77 (N.D. Cal. 2001)); <br>• company experienced "strong sales" and company's "[d]emand remained as strong as ever" (*Solarcity*, 274 F. Supp. 3d at 995); <br>• there was "minimal impact" on growth from price change (*Ziolkowski v. Netflix, Inc.*, 2018 WL 4587515, at \*7-10 (N.D. Cal. Sept. 25, 2018)); <br>• company has "strong demand metrics and good momentum" and "our demand indicators are strong" (*Juniper Networks*, 880 F. Supp. 2d at 1064). |
| **Future Plans**: AOS would take a "thoughtful, a systematic approach to reducing inventories | • company had "[d]isciplined product oversight and development" (*In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016)); <br>• company had a "disciplined approach" (*Se. Pennsylvania Transp.* |

19

| | |
|---|---|
| over time." App. No. 41. | *Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at \*22 (M.D. Pa. June 22, 2015));<br>• company had "a viable plan to move forward" (*In re CDNOW, Inc. Sec. Litig.*, 138 F. Supp. 2d 624, 637 n.15 (E.D. Pa. 2001)). |

### 4.    Many of the Challenged Statements Are Protected by the Safe Harbor

Plaintiff also challenges many forward-looking statements regarding Defendants' financial projections and future plans to reduce channel inventory in China (*see, e.g.*, App. Nos. 8, 37-38, 53-54, 59-61). These statements are not actionable because they are protected by the statutory safe harbor. The PSLRA immunizes from liability forward-looking statements—including financial projections, plans and objectives for future operations, and assumptions underlying those projections, plans, and objectives (*see* 15 U.S.C. § 78u-5(i)(1))—that are **either** (i) accompanied by meaningful cautionary language **or** (ii) not made with "actual knowledge" of falsity. *See* 15 U.S.C. § 78u-5(c)(1). The statements at issue here qualify for protection under either prong.

Meaningful cautionary language—*i.e.*, "factors that could cause actual results to differ materially from those in the forward-looking statement" (15 U.S.C. § 77z-2(c)(1)(A)(i))—accompanied AOS's forward-looking statements. To qualify as "meaningful," the PSLRA "does not require the *most* helpful caution; it is enough to identify[] important factors that could cause actual results to differ materially from those in the forward-looking statement." *St. Lucie Cty. Fire Dist. Firefighters' Pension Tr. Fund v. Motorola, Inc.*, 2011 WL 814932, at \*9 (N.D. Ill. Feb. 28, 2011); *see also W. Pa. Elec. Emps. Pension Tr. v. Plexus Corp.*, 2009 WL 604276, at \*8 (E.D. Wis. Mar. 6, 2009) ("cautionary language does not have to identify the particular risk that actually materializes").

Here, AOS advised that its press releases, public filings, presentations, and investor calls contained forward-looking statements that were "subject to risks and uncertainties that could cause actual results to differ materially from those anticipated." *See, e.g.*, Ex. 5 at 21; Ex. 14 at 4; Ex.

20

20 at 1. AOS then specifically warned that "a further slowdown in the growth rate of the Chinese economy and/or a decline in the growth rate of consumer spending in China" could cause actual results to differ materially from AOS's projections—the very risk that materialized here. *See, e.g.*, Ex. 1 at 23; Ex. 27 at 6. In addition, AOS stated that future performance likely would be negatively impacted by elevated channel inventory in China. *See, e.g.*, Ex. 20 at 6. AOS's company-specific and detailed risk disclosures are precisely the type that have been found to be meaningfully cautionary. *See, e.g.*, *Plexus*, 2009 WL 604276, at *9; *Motorola*, 2011 WL 814932, at *9.

Furthermore, even if the forward-looking statements were not accompanied by meaningful cautionary language (they were), the PSLRA still protects them from liability unless Plaintiff pleads, "in great detail," facts demonstrating that the Individual Defendants made the statements with "actual knowledge that they were false." *See Splash*, 160 F. Supp. 2d at 1069; *Motorola*, 2011 WL 814932, at *10; 15 U.S.C. § 78u-5(c)(1). For the reasons described below, Plaintiff has not alleged particularized facts demonstrating that the Individual Defendants made any statement with *scienter*—much less facts meeting the "stricter standard of actual knowledge of falsity." *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18 (9th Cir. 2002). On the contrary, Plaintiff does not allege that *any* Individual Defendant had "actual knowledge" of wrongdoing. *Caterpillar*, 2018 WL 4616356, at *5 ("The pleading implications of the safe harbor provision is to further ratchet up the scienter standard: the 'strong inference' that must be drawn to avoid dismissal cannot be an inference merely of recklessness but must be of actual knowledge."). Plaintiff's claims based on the forward-looking statements should be dismissed.

### 5. Many of the Challenged Statements Are Non-Actionable Opinions

Plaintiff also challenges several non-actionable opinions. *See, e.g.*, App. Nos. 29-30, 37-38, 40, 42-43, 51-52. Although the CC sometimes omits it, these statements are couched in terms of Defendants' beliefs or expectations about the factors driving China's past and future

21

performance.  *See, e.g.*, App. No. 29 ("We ***believe*** the fourth quarter outperformance was driven by customer orders to qualify for volume incentives as well as larger-than-expected inventory build by our e-commerce customers[.]") (emphasis added); *id.* at 30 ("We ***believe*** our growth drivers are intact and that our replacement demand remains substantial[.]") (emphasis added).

Opinions are actionable only if the speaker (1) did not actually hold the professed belief; (2) supplied "untrue" facts supporting the belief; or (3) failed to disclose "material facts" about his "inquiry into or knowledge concerning" the opinion that "conflict with what a reasonable investor would take from the statement itself."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86, 189 (2015).  This is "no small task" to plead, and Plaintiff has not done so here.  *Id.* at 194.  It does not allege particularized facts showing that the Individual Defendants: (1) did not believe the statements at the time they made them; (2) supported the opinions with untrue facts; or (3) knew of and withheld material facts that made the opinions misleading to a reasonable investor.  These statements should be dismissed.

## B.     Plaintiff Fails to Plead a "Strong Inference" of Scienter

Beyond Plaintiff's failure to allege an actionable false statement, the CC also should be dismissed because it does not plead particularized facts giving rise to a strong inference of scienter.  *See* 15 U.S.C. § 78u-4(b)(2); *Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at \*15 (N.D. Ill. Feb. 9, 2015).  To withstand a motion to dismiss, Plaintiff must allege scienter "in great detail," through "facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F. 3d 970, 974 (9th Cir. 1999).  Plaintiff also cannot rely on generalized scienter allegations—the CC must create a strong inference of scienter as to ***each*** Defendant for ***each*** alleged misstatement.  *Pugh v. Tribune Co.*, 521 F.3d 686, 693-94 (7th Cir. 2008).  Plaintiff's allegations fall far short of meeting this standard, either individually or in combination.

22

Indeed, the fact that Defendants continually told investors when channel inventory was elevated and how it could impact AOS's performance *negates* scienter. Rather than concealing an inventory issue, AOS "repeatedly alerted investors" to it. *Pier 1*, 935 F.3d at 437. Warning investors about risks "generally weaken[s] the inference of scienter." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 760 (1st Cir. 2011). Plaintiff cannot establish a strong inference of scienter for this reason alone. Its other allegations also fail.

### 1. The CW Allegations Do Not Support Scienter

None of Plaintiff's seven CWs supports a strong inference of scienter—or even falsity— for several reasons. As an initial matter, the Seventh Circuit has "repeatedly admonished" that "information obtained from confidential witnesses is generally subject to a 'discount' that it has alternately characterized as 'steep' and 'heavy.'" *Rossy v. Merge Healthcare, Inc.*, 169 F. Supp. 3d 774, 782 (N.D. Ill. 2015) (citing *Higginbotham*, 495 F.3d at 756-57; *Boeing*, 711 F.3d at 759). The flimsiness of the CW allegations here exemplifies the Seventh Circuit's skepticism.

First, five of the CWs never worked for AOS. Of the two who did, one (CW2) left in 2015 (long before the Class Period began), and the other (CW5)[4] left in July 2017 (shortly after the 27-month Class Period started). Allegations by CWs who "were not employed by [the company] during the time period in question" cannot help the scienter analysis, and should be disregarded. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 995-98 (9th Cir. 2009); *see also Mattel*, 321 F. Supp. 3d at 1154 (CW employed before the class period "could not have personal knowledge of the retail inventory levels at the time" of allegedly false statements).

Second, none of the allegations suggests that the Defendants made any false statements, let

---

[4] CW5 states the unremarkable fact that "UTP provided loans to distribution agents." CC ¶ 97. CW5 does not allege whether AOS had anything to do with those loans, who the distribution agents were, how much was loaned, when these loans occurred, or if anything improper occurred.

alone with scienter. *See Alizadeh*, 2015 WL 557249, at \*15. For example, not one of the CWs alleges that AOS engaged in improper channel stuffing. Only one (CW3) even discusses channel inventory, and she reported that overstocking was "common among companies" purchasing AOS products because AOS sets a "sales goal for its distributors." CC ¶ 96. This allegation "reveals legitimate marketing and incentive practices engaged in by most companies," not an unlawful scheme. *Spectrum*, 461 F. Supp. 2d. at 1310; *see also In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 391 (E.D. Pa. 2005) (disregarding CW allegation that failed to allege the financial results "were attained through the use of fraudulent practices"). Likewise, not one of the CWs suggests that UTP was a "customer" responsible for more than 10% of AOS's consolidated revenues. Just the opposite, CW4 called UTP AOS's "business partner." CC ¶ 97. And while a few of the CWs report that UTP loaned money to customers to purchase products, none describes whether AOS had any rights or obligations under those agreements, much less that AOS violated accounting rules by failing to disclose them. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 887 (4th Cir. 2014) (disregarding CW allegations that did not "expressly assert that the MuniMae defendants intentionally or recklessly failed to comply with GAAP"); *H-D*, 660 F. Supp. 2d at 987 (CW allegations "do not actually mention any reports that contained statistics materially inconsistent with the defendants' public statements").

Third, and relatedly, the allegations are, at best, vague and anecdotal. For instance, there is no way to determine whether the purported "overstocking" CW3 alleges was limited or widespread—or in any way inconsistent with AOS's repeated reporting on elevated Chinese channel inventory. *See Pier 1*, 935 F.3d at 433 (discounting CW allegation because it said "nothing about inventory problems across Pier 1's other five distribution centers and thousands of stores").

Finally, and most importantly, even assuming the CW statements are truthful and accurate,

24

they do not support a strong inference of scienter because they "reveal nothing about any defendant's knowledge or state of mind." *Rossy*, 169 F. Supp. 3d at 782. None of the CWs "had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into" their state of mind. *Veal*, 2019 WL 5698072, at *18; *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019). The CW allegations should be disregarded.

### 2. Individual Defendants' Stock Sales Do Not Support Scienter

The Individual Defendants' stock sales also undermine Plaintiff's allegations. To suggest scienter, insider stock sales must be "unusual or suspicious" (*Pugh*, 521 F.3d at 695)—*i.e.*, "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information" (*H-D*, 660 F. Supp. 2d at 1000). These considerations do not support scienter here.

To start, none of the stock sales is suspicious in timing or amount. Plaintiff notes that Rajendra, Kita, and Wheeler collectively sold approximately $12 million in stock (CC ¶ 157)— but this does not render their trading "suspicious" considering the unusually long 118-week Class Period. *See id.* at 1; *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 120 (3d Cir. 2018) (twenty-nine-month class period "cautions against inferring scienter from the alleged insider trading"); *In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (sixty-three week class period was "unusually long" and could not support a finding that stock sales were suspicious). Further undercutting any inference of scienter is the fact that the Individual Defendants retained a majority of their shares—and economic stake in the Company—over the Class Period. Wheeler had more AOS shares at the end of the Class Period than at the beginning, while Rajendra and Kita retained over seventy percent of their respective holdings. George Decl. ¶¶ 46-49. The fact that the Individual Defendants "retained significantly more stock than they sold during the class period"

25

weighs against an inference of scienter. *H-D*, 660 F. Supp. 2d. at 1001.

The timing also is not suspicious. Plaintiff does not even attempt to link the stock sales to any Challenged Statement. *Okla. Firefighters Pension & Ret. Sys. & Okla. Law Enforcement Ret. Sys. v. IXIA*, 2015 WL 1775221, at *36 (C.D. Cal. April 14, 2015). Instead, the "complaint suggests no more than that the individual defendants sold when prices were high and did so on different days and at different prices," which is not enough. *Plexus*, 2009 WL 604276, at *5. In addition, all of the stock sales occurred nearly a year (or more) before the first alleged corrective disclosure on April 30, 2019 (George Decl. ¶¶ 47-49)—a "broad temporal distance" that "defeats any inference of scienter." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 940 (7th Cir. 2018); *see also H-D*, 660 F. Supp. 2d at 1002 (nine-month gap between sales and disclosures undermines scienter).

### 3.    Plaintiff's Other Allegations Do Not Support Scienter

The CC does not identify a single instance in which an Individual Defendant learned of the alleged wrongdoing prior to making a Challenged Statement. Plaintiff does not allege, for example, that any of the Individual Defendants reviewed documents or attended meetings where the allegedly improper channel-stuffing scheme, UTP's status as AOS's largest "customer," or potential GAAP violations were discussed. *See Spectrum*, 461 F. Supp. 2d. at 1319 ("[M]issing from Plaintiffs allegations are mention of specific transactions, communications, or events that would show that Steward or Jones knew of the alleged channel-stuffing conduct or that the conduct would have been obvious to them."). Plaintiff instead offers scattershot reasons why it believes the Individual Defendants must have known about the alleged misconduct. *See* CC ¶¶ 20, 144-58. This "theoretical approach is not sufficient" to establish a strong inference of scienter. *Spectrum*, 461 F. Supp. 2d. at 1315-16; *see MGIC*, 2010 WL 601364, at *13 ("[P]laintiff cannot simply rest on its suspicion that alarm bells must have been ringing. . . . Rather, it must plead facts that

26

transform this suspicion into a cogent inference that alarm bells were, in fact, ringing[.]").

Plaintiff first says that because "of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts . . . had not been disclosed to, and were being concealed from, the investing public[.]" CC ¶ 20. It is well settled, however, that "a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019). Likewise, the Individual Defendants' "respective positions within the company prove nothing about fraud or knowledge thereof but rather are exactly the type of generalized allegations the court must disregard under the PSLRA." *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 746-47 (S.D. Ind. 2009); *see also, e.g.*, *PrivateBancorp*, 2011 WL 5374095, at *8 ("scienter . . . may not rest on the inference that defendants must have been aware of a misstatement based simply on their positions within the company").

Plaintiff then argues that the Individual Defendants "clearly knew" about the alleged channel stuffing, UTP's supposed status as AOS's largest "customer," and GAAP violations because: (1) China was a "core business" that Defendants "emphasized" and "focused on"; (2) UTP was AOS's "most important customer"; and (3) Individual Defendants "professed detailed knowledge" of inventory levels and had "personal exposure to China operations." CC ¶¶ 145-54. The Seventh Circuit has "expressly criticized" these types of conclusory assertions. *Pugh*, 521 F.3d at 694. Indeed, all of the allegations suffer from the same flaw: they equate alleged knowledge of *facts* with knowledge of *fraud*. There is a "big difference" between knowing about

China and knowing about misconduct in China.[5] *Higginbotham*, 495 F.3d at 758; *see also, e.g.*, *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1166 (E.D. Wis. 2017) ("[K]nowing an accounting rule and knowing that it is not being followed . . . are two different things."); *Pier 1*, 935 F.3d at 432 ("Knowledge of high inventory does not necessarily equate to knowledge of significant markdown risk[.]").

The CC alleges that the Defendants updated investors about AOS's Chinese inventory challenges, but it contains nothing suggesting that any Individual Defendant knew that AOS China was improperly stuffing channels. *See In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) (rejecting allegations to infer scienter "because senior executives are presumed to know facts critical to a company's core operations"). Plaintiff similarly fails to allege any facts suggesting that any Individual Defendant believed UTP was a material "customer," or that AOS was violating GAAP by failing to disclose financing arrangements with certain distributors. *See Kohl's*, 266 F. Supp. 3d at 1166 (complaint contained "very little factual information" tying defendants to the receipt of information that would contradict their statements).

Finally, Plaintiff incorrectly suggests that scienter can be inferred through the Individual Defendants' SOX certifications. CC ¶ 158. These boilerplate signatures "add nothing substantial to the scienter calculus." *Mattel*, 321 F. Supp. 3d at 1155-56; *see also Kohl's*, 266 F. Supp. 3d at 1167 (crediting SOX certifications would "eviscerat[e] the pleading requirements for scienter").

---

[5] Plaintiff notes that Rajendra, Kita, and Wheeler had "personal exposure to China operations" prior to the Class Period. This is irrelevant to the scienter inquiry. *See, e.g.*, *Anderson v. Spirit AeroSystems Holdings, Inc.*, 827 F.3d 1229, 1239-40 (10th Cir. 2016) (pre-class period meeting did not support scienter because plaintiffs do not identify any facts showing the defendants "knew during the class period that their progress reports were inaccurate"). Plaintiff does not allege that any of the Individual Defendants learned about the alleged improper channel-stuffing scheme, UTP's status as a material "customer," or GAAP violations at *any* time.

28

## C.      Plaintiff Fails to Plead Loss Causation

Finally, Plaintiff has failed to plead loss causation because it cannot identify a corrective disclosure that revealed fraud to the public and caused Plaintiff's loss.  *See Dura*, 544 U.S. at 345-46; *Glickenhaus & Co. v. Household Intern., Inc.*, 787 F.3d 408, 421 (7th Cir. 2015).  Plaintiff points to three disclosures:  AOS's April 30, 2019 earnings release and the two JCap Reports.  CC ¶¶ 161, 164, 167.  None is "corrective."

The earnings release is not a corrective disclosure because it confirmed information that AOS had revealed previously.  A "corollary of the efficient market hypothesis" (which Plaintiff invokes to establish reliance (CC ¶¶ 178-80)) is that "disclosure of confirmatory information—or information already known by the market—will not cause a change in the stock price." *Meyer v. Greene*, 710 F.3d 1189, 1197-99 (11th Cir. 2013).  "It follows that '[c]orrective disclosures must present facts to the market that are . . . publicly revealed for the first time.'"  *Id.*  Here, Plaintiff says that AOS's "abysmal financial results" in China "shocked" the market.  CC ¶¶ 161-62.  But in January 2019, AOS projected that first-quarter China sales in local currency would decrease by "approximately 20%."  Ex. 25 at 7.  The actual first-quarter China sales (which AOS announced on April 30 and which Plaintiff deems "abysmal") declined by eighteen percent—*almost exactly* as AOS predicted.  *See* Ex. 29 at 5.  Materialization of "risks that the Company has previously disclosed and warned against are not corrective disclosures."  *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 865 (S.D. Tex. 2016); *see also Powell v. Idacorp, Inc.*, 2006 WL 851116, at *3 (D. Idaho Mar. 29, 2006) (no loss causation for reduced forecasts where the company had previously announced several factors that could possibly impact the company's performance).

Nor are the JCap Reports corrective disclosures.  At most, they represented the author's sensationalized (and self-interested) opinion that AOS had engaged in improper channel stuffing with UTP's assistance.  *See Meyer*, 710 F.3d at 1199 (short-seller's "opinion, standing alone,

29

cannot 'reveal to the market the falsity' of a company's prior factual representations"); *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (third-party's negative opinions "are not 'corrective' for the purpose of pleading loss causation"). JCap itself warned that investors could not rely on the "accuracy, timeliness, or completeness" of its opinions. Ex. 33 at 1. JCap also conceded that it stood "to realize significant gains" if AOS's stock price fell. *Id.* Loss causation cannot be pled merely by pointing to a short-seller's accusations and "asserting that where there is smoke, there must be fire." *See Curry v. Yelp, Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017); *Meyer*, 710 F.3d at 1200.

The JCap Reports also are not corrective disclosures because they were based on publicly available information. Ex. 33 at 1. Analysis of already-public facts is "insufficient to constitute a corrective disclosure." *Meyer*, 710 F.3d at 1199; *see also In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("negative characterization of already-public information" is not corrective). JCap conceded that AOS's UTP relationship was "widely known in the industry, and UTP talks about it openly." Ex. 33 at 8. In an efficient market, "all public information is incorporated into the market price no matter how far flung it may be." *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 4585753, at *5 (N.D. Cal. Sept. 2, 2016). Because the JCap Reports collected and opined upon public information, they are not corrective. *See, e.g.*, *In re Intrexon Corp. Sec. Litig.*, 2017 WL 732952, at *7 (N.D. Cal. Feb. 24, 2017).

## IV. CONCLUSION

For the foregoing reasons, the CC should be dismissed.

Date: January 24, 2020

Respectfully submitted,

 */s/ Sean M. Berkowitz*
Sean M. Berkowitz (6209701 IL)
Nicholas J. Siciliano (6287387 IL)
Kathryn K. George (6306004 IL)
LATHAM & WATKINS LLP
sean.berkowitz@lw.com
nicholas.siciliano@lw.com
kathryn.george@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

FOLEY & LARDNER LLP
Bryan B. House, WI Bar No. 1022054
Andrew J. Wronski, WI Bar No. 1024029
Nathan D. Imfeld, WI Bar No. 1092934
777 East Wisconsin Street
Milwaukee, WI 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
bhouse@foley.com
awronski@foley.com
nimfeld@foley.com

*Attorneys for Defendants A. O. Smith Corporation,
Ajita Rajendra, Kevin Wheeler, and John Kita*

31