# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:19-CV-01198-LA |
| vs. | ) ) ) ) | |
| A. O. SMITH CORPORATION, AJITA RAJENDRA, KEVIN WHEELER, and JOHN KITA, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF
## <u>MOTION TO DISMISS CONSOLIDATED COMPLAINT</u>

Date: May 8, 2020

FOLEY & LARDNER LLP
Bryan B. House, WI Bar No. 1022054
Andrew J. Wronski, WI Bar No. 1024029
Nathan D. Imfeld, WI Bar No. 1092934
777 East Wisconsin Street
Milwaukee, WI 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
bhouse@foley.com
awronski@foley.com
nimfeld@foley.com

LATHAM & WATKINS LLP
Sean M. Berkowitz (6209701 IL)
Nicholas J. Siciliano (6287387 IL)
Kathryn K. George (6306004 IL)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
sean.berkowitz@lw.com
nicholas.siciliano@lw.com
kathryn.george@lw.com

*Attorneys for Defendants A. O. Smith Corporation, Ajita Rajendra, Kevin Wheeler, and John Kita*

# TABLE OF CONTENTS

<b>Page(s)</b>

I. INTRODUCTION .................................................................................................1

II. ARGUMENT ......................................................................................................2

    A. Plaintiff Fails to Plead a Materially False or Misleading Statement .......................2

        1. Plaintiff Fails to Plead an Improper Channel-Stuffing Scheme...................2

        2. Plaintiff Fails to Plead That UTP Is a Material "Customer" .......................6

        3. Plaintiff Fails to Plead That AOS Violated GAAP....................................7

        4. Many of the Challenged Statements Are Non-Actionable Assertions of Corporate Optimism .................................................................8

        5. Many of the Challenged Statements Are Protected by the Safe Harbor .................................................................................................9

        6. Many of the Challenged Statements Are Non-Actionable Opinions.........11

    B. Plaintiff Fails to Plead a "Strong Inference" of Scienter .....................................12

    C. Plaintiff Fails to Plead Loss Causation ..................................................................15

III. CONCLUSION..................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ................................................................................. 12

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020) ........................................... 4, 9, 10, 11

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ................................................................................. 13

*Cunha v. Hansen Nat. Corp.*,
2011 WL 8993148 (C.D. Cal. May 12, 2011) ........................................................ 4

*Davidoff v. Farina*,
2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ........................................................ 3

*ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) .................................................................................... 8

*Friedman v. Rayovac Corp.*,
295 F. Supp. 2d 957 (W.D. Wis. 2003) ................................................................. 4

*Fulton Cty. Emps. Ret. Sys. v. MGIC Inv. Corp.*,
2010 WL 601364 (E.D. Wis. Feb. 18, 2010) ......................................................... 13

*Harris v. AmTrust Fin. Servs., Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016) ........... 7

*Higginbotham v. Baxter Int'l Inc.*,
495 F.3d 753 (7th Cir. 2007) ................................................................................. 13

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019) .................................................... 4, 5

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
2020 WL 1676762 (E.D.N.Y. Apr. 6, 2020) ......................................................... 4

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018) ....... 8

*In re HP Sec. Litig.*,
2013 WL 6185529 (N.D. Cal. Nov. 26, 2013) ....................................................... 9

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) ..................................................................... 15

*In re K-Tel Int'l Sec. Litig.*,
300 F.3d 881 (8th Cir. 2002) ................................................................................... 7

*In re Midway Games, Inc. Sec. Litig.*,
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ..................................................................... 9

*In re Sawtek, Inc. Sec. Litig.*,
2005 WL 2465041 (M.D. Fla. Oct. 6, 2005) ........................................................... 10

*In re Sci. Atlanta, Inc. Sec. Litig.*,
239 F. Supp. 2d 1351 (N.D. Ga. 2002), *aff'd sub nom. Phillips v. Sci. Atlanta,
Inc.*, 374 F.3d 1015 (11th Cir. 2004) ....................................................................... 4

*In re Spectrum Brands, Inc. Sec. Litig.*,
461 F. Supp. 2d 1297 (N.D. Ga. 2006) ............................................................... 4, 13

*In re St. Jude Med. Inc. Sec. Litig.*,
836 F. Supp. 2d 878 (D. Minn. 2011) ...................................................................... 4

*In re Twinlab Corp. Sec. Litig.*,
103 F. Supp. 2d 193 (E.D.N.Y. 2000) ...................................................................... 4

*Lewis v. YRC Worldwide Inc.*,
2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) ......................................................... 3

*Long Miao v. Fanhua, Inc.*,
2020 WL 996602 (S.D.N.Y. Mar. 2, 2020) ..................................................... 1, 5, 14

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020).................................................... 14, 15

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ............................................................................... 3, 6

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) .................................................................. 14

*Miller v. PCM, Inc.*,
2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) ........................................................... 15

*Mun. Emps.' Ret. Sys. v. Pier 1 Imps., Inc.*,
935 F.3d 424 (5th Cir. 2019) ................................................................................... 6

*NECA-IBEW Pension Fund v. N. Tr. Corp.*,
2013 WL 1290202 (N.D. Ill. Mar. 28, 2013)........................................................... 11

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
  2018 WL 3126393 (N.D. Cal. June 26, 2018) ............................................................. 8, 10, 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ...................................................................................................... 12

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
  895 F.3d 933 (7th Cir. 2018) ........................................................................................ 15

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
  266 F. Supp. 3d 1154 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018) .................. 14, 15

*Pierrelouis v. Gogo, Inc.*,
  414 F. Supp. 3d 1164 (N.D. Ill. 2019) ........................................................................... 13

*Ramzan v. GDS Holdings Ltd.*,
  2020 WL 1689772 (S.D.N.Y Apr. 7, 2020)...................................................................... 12

*Selbst v. McDonald's Corp.*,
  2005 WL 2319936 (N.D. Ill. Sept. 21, 2005) .................................................................... 7

*Selbst v. McDonald's Corp.*,
  432 F. Supp. 2d 777 (N.D. Ill. 2006) ................................................................................ 7

*Silverman v. Motorola, Inc.*,
  2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ............................................................... 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................................ 6

*Xiaojiao Lu v. Align Tech., Inc.*,
  417 F. Supp. 3d 1266 (N.D. Cal. 2019) ........................................................................... 12

*Zhong Zheng v. Pingtan Marine Enter. Ltd.*,
  379 F. Supp. 3d 164 (E.D.N.Y. 2019) ............................................................................. 15

## STATUTES

15 U.S.C. § 77z-2(i)(1) ....................................................................................................... 10

## GLOSSARY OF DEFINED TERMS

| | |
|---|---|
| ASC: | Accounting Standards Codification |
| App.: | Appendix A, listing the statements challenged by Plaintiff in the CC, filed concurrently with the Motion (Dkt. No. 24) |
| AOS: | A. O. Smith Corporation |
| CC: | Consolidated Class Action Complaint for Violations of the Federal Securities Laws, filed November 22, 2019 (Dkt. No. 21) |
| Challenged Statements: | Defendants' statements Plaintiff challenges as false or misleading (CC ¶¶ 103-142) |
| Class Period: | February 17, 2017 through May 28, 2019 |
| Company: | A. O. Smith Corporation |
| CW or CWs: | Confidential Witness(es), as identified in the CC |
| Defendants: | A. O. Smith Corporation, Ajita Rajendra, Kevin Wheeler, and John Kita |
| Defendants' Motion or Motion or Mot. | Defendants' Memorandum of Law in Support of the Motion to Dismiss Consolidated Complaint, filed January 24, 2020 (Dkt. No. 23) |
| Individual Defendants: | Ajita Rajendra, Kevin Wheeler, and John Kita |
| Ex. or Exs.: | Exhibit(s), which are attached to the Declaration of Kathryn K. George (Dkt. No. 25), filed concurrently with the Motion |
| EY: | Ernst & Young LLP |
| GAAP: | Generally Accepted Accounting Principles |
| JCap: | J Capital Research |
| JCap Reports: | May 16, 2019 and May 29, 2019 Short-Seller Reports by J Capital Research, attached as Exhibits 33 and 35 to the Declaration of Kathryn K. George (Dkt. No. 25), filed concurrently with Motion |
| Plaintiff: | City of Birmingham Retirement and Relief System |
| Plaintiff's Opposition or Opposition or Opp. | Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint, filed April 3, 2020 (Dkt. No. 30) |
| PSLRA: | The Private Securities Litigation Reform Act of 1995 |
| Rule 9(b): | Federal Rule of Civil Procedure 9(b) |
| UTP: | Jiangsu Huiyuan Supply Chain Management Co., Ltd. |

## I. INTRODUCTION

Months after AOS began explaining how elevated channel inventory was impacting its China sales, notorious short seller JCap released a report surmising without proof that AOS was engaged in improper channel stuffing with the assistance of supply-chain provider UTP. Relying on anecdotal quotes from unnamed public sources, JCap refused to guarantee the accuracy or completeness of its information, and admitted that its opinions might change without notice. But that did not stop Plaintiff from filing this lawsuit as soon as AOS's stock price fell. Defendants' Motion explained that Plaintiff has not alleged "channel stuffing"—or its related assertions that AOS violated GAAP and UTP was a material "customer"—with the heightened particularity required by Rule 9(b) and the PSLRA. In fact, rather than identify particularized facts supporting its claims, Plaintiff's CC relied almost exclusively on JCap's sensationalized assertions.

Plaintiff's Opposition confirms the CC's deficiencies. It ignores the obvious bias of its "source," euphemistically calling JCap a "securities analyst"—not a short seller that admitted it would reap significant gains if AOS's stock price fell. Worse still, although JCap strategically cabined its assertions with hedging phrases like "we think" or "we believe," Plaintiff removes this language in its Opposition, presenting JCap's *opinions* as *fact*. Plaintiff's allegations thus are not only un-particularized, but often based on multiple layers of uncorroborated hearsay. The CC should be dismissed on this ground alone. Indeed, just two months ago, a federal district court dismissed a similar claim based on another JCap attack—discounting JCap's assertions and noting the short seller had "an obvious motive to exaggerate the infirmities of the securities in which they speculate." *Long Miao v. Fanhua, Inc.*, 2020 WL 996602, at *18 (S.D.N.Y. Mar. 2, 2020).

But even if JCap's factual assertions were credited, Plaintiff still falls far short of meeting its heightened pleading burden. To start, Plaintiff's falsity allegations rest on three incorrect (and unsupported) premises. *First*, Plaintiff argues, parroting JCap, that AOS improperly "channel

1

stuffed." Plaintiff contends that channel stuffing can become fraudulent when a company books fake revenues through sales on consignment. But Plaintiff does not allege particularized facts that AOS improperly recognized revenue on *any* sales. On the contrary, Plaintiff: (i) concedes that AOS has not restated its financials; and (ii) does not even describe (much less challenge) AOS's revenue-recognition practices. *Second*, Plaintiff vaguely asserts that UTP is "responsible for as much as 75%" of Chinese sales, but fails to allege facts showing that UTP is an actual *customer* that comprises anywhere close to 75% of AOS's Chinese revenues. *Third*, Plaintiff baldly contends that AOS violated GAAP, but does not explain with particularized facts how or why this is so. In any event, nearly all of the Challenged Statements are vague expressions of corporate optimism, forward-looking and protected by the PSLRA safe harbor, or non-actionable opinions.

Plaintiff's scienter allegations are equally lacking. The Opposition does not point to a single particularized fact showing that the Defendants knew (or were intentionally reckless in not knowing) that any statements about the China business were false or misleading. Plaintiff instead argues that Defendants "clearly knew" their statements were false because AOS China was channel stuffing with its "most important customer." This simply restates Plaintiff's conclusory falsity allegations and falls far short of pleading a strong inference of scienter as to any Defendant.

Finally, Plaintiff has not established loss causation because its three corrective disclosures were not "corrective" at all. The first was an earnings release that confirmed facts AOS had predicted. The other two were the JCap Reports, which (as JCap conceded) represented the short-seller's opinions based on publicly available information. The CC should be dismissed.

## II. ARGUMENT

### A. <u>Plaintiff Fails to Plead a Materially False or Misleading Statement</u>

#### 1. <u>Plaintiff Fails to Plead an Improper Channel-Stuffing Scheme</u>

The Opposition makes clear that Plaintiff has come nowhere close to alleging an improper

channel-stuffing scheme with particularity. Quoting the Seventh Circuit's decision in *Tellabs III,* Plaintiff notes that channel stuffing could become fraudulent if a company (i) "book[ed] revenues on the basis of goods shipped but not really sold" because (ii) "the buyer can return them." Opp. at 13. This is because the sales are "in effect" on consignment, and "cannot be booked as revenue." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2008) ("*Tellabs III*") (internal quotations and citations omitted). Plaintiff has alleged neither factor with particularity.

To start, the CC does not allege a single particularized fact regarding *when* or *how* AOS recognizes revenue. On the contrary, although Plaintiff asserts that AOS generated "false revenues" (Opp. at 11 n.4), Plaintiff says *nothing* about AOS's revenue-recognition practices— including whether AOS recognizes revenue when it ships products to UTP for warehousing. In fact, the Opposition concedes that (i) AOS has not restated any financial statements (which were audited by EY); and (ii) Plaintiff is not alleging that AOS is "required to reverse sales." *Id.* at 17. Plaintiff thus does not make it past the *Tellabs III* starting gate: it has not established that AOS was "book[ing] revenues on the basis of goods shipped but not really sold." Plaintiff's claims fail on this ground alone. *See, e.g.*, Mot. at 10-11; *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *14 (N.D.N.Y. Mar. 27, 2020) (plaintiff did not allege company "reported income that it did not actually receive"); *Davidoff v. Farina*, 2005 WL 2030501, at *13 (S.D.N.Y. Aug. 22, 2005) (improper revenue-recognition claim was "exceedingly general" because it did not "indicate when, by whom or what size 'fictitious' orders were generated").

Plaintiff also has not alleged a single particularized fact showing that Chinese sales were fictitious because "buyers" could "return" the goods. *Tellabs III,* 513 F.3d at 709. Plaintiff asserts repeatedly that AOS agreed to "repurchase" products "in the event they could not be sold," but Plaintiff fails to support this bald assertion with particularized facts. Indeed, Plaintiff's own

3

allegations suggest distributors *do not* have that right. As Plaintiff admits, in connection with UTP's lending facilities with certain banks, AOS agreed to repurchase certain inventory *only* "if both requested *by the bank* and *certain defined conditions are met, primarily related to the aging of the distributors' notes*." CC ¶ 87. Nowhere does Plaintiff allege any particularized facts that distributors can return products they cannot sell. Plaintiff does not even allege that any distributor has ever returned any products, let alone products for which AOS had recognized revenue. *See In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1308 (N.D. Ga. 2006); *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2020 WL 1676762, at *11 (E.D.N.Y. Apr. 6, 2020) (complaint provided "no specific details regarding an absolute right of return"). In fact, Plaintiff ignores that pursuant to these bank arrangements, AOS *never* has received an inventory repurchase request, and even if it did, UTP would be required to indemnify AOS for associated losses. *See* CC ¶ 87; Ex. 36 at 2. This arrangement is nothing like the "fictitious sales" described in *Tellabs III*. *See In re Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *16 (E.D.N.Y. Mar. 29, 2019) (plaintiff failed to support that "sales were in fact comprised largely of consignment shipments").[1]

The only "facts" Plaintiff identifies in its Opposition counsel against an improper channel-

---

[1] Plaintiff's channel-stuffing cases underscore the CC's deficiencies. All involved particularized improper revenue-recognition allegations, detailed accounts from former employees describing the scheme, or both. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 2020 WL 1529371, at *4, 19 (S.D.N.Y. Mar. 30, 2020) (particularized allegations regarding "premature recognition of revenue"); *In re St. Jude Med. Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 891, 901 (D. Minn. 2011) (quoting fifteen former employees and describing improper revenue-recognition practices); *Cunha v. Hansen Nat. Corp.*, 2011 WL 8993148, at *3 (C.D. Cal. May 12, 2011) (channel stuffing illegitimate when it included "writing orders for products customers had not requested"); *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 986-87 (W.D. Wis. 2003) (channel-stuffing allegations "manage[d] to scrape by, if only barely" based on numerous employee statements attesting to channel-stuffing practices); *In re Sci. Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1355 (N.D. Ga. 2002) (alleging specific examples of channel stuffing, including improper revenue recognition); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 202 (E.D.N.Y. 2000) (company restated financials where it recognized revenues before sales were completed). The CC contains none of this—even Plaintiff concedes it is not alleging improper revenue recognition. *See* Opp. at 17.

4

stuffing scheme.  Plaintiff says that "[b]y 2018," distributors had "eight months of inventory," and "many distributors [could not] keep up with the contracted orders enforced by AOS" and were "breaking contracts, because the inventory pressure [was] so great."  Opp. at 6.  These assertions fail for numerous, independent reasons.

First, they are based entirely on unreliable, uncorroborated hearsay from the JCap Reports.[2] For example, Plaintiff asserts *as fact* that distributors were "breaking contracts."  Even JCap did not go that far.  It quoted an unnamed distributor as saying, "*We hear* that many distributors cannot keep up with the contracted orders enforced by AOS.  They are breaking contracts, because the inventory pressure is so great."  Ex. 35 at 6.  Plaintiff removes all of the context, and in so doing obscures that it is relying on (at least) triple hearsay from an unidentified source.  As the court in another recent case involving JCap concluded, reliance on "statements made by anonymous—and often vaguely described—interviewees" whom counsel has learned about "secondhand from citations in a short-seller's report" "sit, at best, uneasily" with Rule 11.  *Miao*, 2020 WL 996602, at *15, *20.  The CC's core allegations rest on JCap's self-interested speculation, and should be rejected.  *See Hain*, 2019 WL 1429560, at *18 (dismissing where several of the individuals' connections to the purported scheme were "vague" and based on "multiple layers" of hearsay).

Second, the JCap accounts are, at best, anecdotal and, at worst, conflicting.  Plaintiff quotes an anonymous JCap source as saying it had "*eight* months of inventory."  Opp. at 6.  But according to JCap (as parroted by Plaintiff), another supposedly had "*six* months," and JCap's "survey" said the average was "*4.5* months, up from *4* months" in January 2019.  CC ¶¶ 48, 78.  It is entirely unclear from Plaintiff's allegations:  (i) *whether* these inventory levels were unusual; (ii) *how much*

---

[2] Plaintiff's CWs also do not support an improper channel-stuffing scheme.  None of the CWs stated (or even suggested) that AOS China was recognizing false revenues or granting an unlimited return right.  The CWs say nothing at all about returning products.  Equally important, none of the CWs contradicts any of AOS's statements about the China business.

of AOS China's sales these distributors represented; or (iii) *why* this indicates an improper scheme (as opposed to a channel-inventory increase following the Chinese housing market collapse).

Third, and relatedly, none of the JCap accounts suggests (much less supports) that AOS was improperly recognizing revenue or creating fictitious sales through an unlimited right of return. *See Tellabs III,* 513 F.3d at 709. Just the opposite: distributors would not need to "break contracts" as Plaintiff asserts if they had an absolute right of return. Plaintiff's entire channel-stuffing theory is not even *plausible*, much less cogent, compelling, and supported by particularized facts. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). The channel-stuffing claims are entirely speculative and should be dismissed.

### 2. Plaintiff Fails to Plead That UTP Is a Material "Customer"

According to Plaintiff, "there can be no question" that Defendants violated Item 101 because "AOS's sales to UTP were more than 10% of AOS's consolidated revenues and 'the loss of [UTP] would have [had] a material adverse effect on [AOS].'" Opp. at 10. This conclusory assertion is the opposite of particularized pleading: it simply restates the SEC rule without identifying any facts showing how AOS violated it. *See Mun. Emps.' Ret. Sys. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 435-36 (5th Cir. 2019). To be sure, Plaintiff repeats the vague refrain that UTP was "responsible for" as much as 75% of AOS's China sales (Opp. at 10), but never alleges AOS sold products to UTP comprising anywhere close to 10% of the Company's consolidated revenues.

Plaintiff instead offers two other arguments—both meritless. *First*, Plaintiff claims that AOS's SEC filings after the Class Period "contained a lengthy, detailed discussion of UTP." *Id*. at 11. Critically, Plaintiff does not—and cannot—claim that AOS has *ever* identified UTP as a *material customer* (whether in a Form 10-K, Form 10-Q, or any other document). Rather, as Plaintiff's own allegations confirm, AOS stated that UTP was a "supply-chain service provider" that provided "order-entry, warehousing and logistics support," as well as "asset-backed financing

6

to certain of the Company's distributors." CC ¶ 87. *Second*, Plaintiff falsely claims Defendants argued that UTP was not a "customer" because it was a "distributor." Opp. at 11-12. In reality, Defendants explained that at most, Plaintiff alleges UTP not only was a supply-chain partner *but also* a distributor (i.e., an AOS customer that sells to end consumers) in two Chinese markets. Mot. at 13-14. Plaintiff alleges no facts suggesting that (i) these markets accounted for 10% or more of AOS's consolidated revenues, or (ii) the loss of this revenue would have a material adverse effect on AOS's business. The material "customer" claims should be dismissed.

### 3. Plaintiff Fails to Plead That AOS Violated GAAP

Plaintiff's assertion that AOS "violated core GAAP disclosure requirements" wholly fails to plead GAAP violations with particularity. *See In re K-Tel Int'l Sec. Litig.*, 300 F.3d 881, 890 (8th Cir. 2002). Indeed, as Plaintiff's cited authority makes clear, "general allegations that a defendant's accounting practices . . . resulted in a false report of the company's earnings is not a sufficiently particular claim of misrepresentation." *Selbst v. McDonald's Corp.*, 2005 WL 2319936, at *10 (N.D. Ill. Sept. 21, 2005).[3] In the "absence of a restatement or allegations pointing to objective facts that Defendants' accounting methods violated GAAP, carping about Defendants' application of GAAP amounts to no more than a naked assertion"—which does not "permit the Court to infer" fraud. *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015) (internal quotations and citation omitted).

Criticizing AOS's accounting judgment is *the most* alleged here. Plaintiff concedes that AOS has not restated any of its financial statements. Opp. at 17. More importantly, Plaintiff points to no facts (much less objective facts) establishing that AOS violated GAAP. This makes sense,

---

[3] Relying on *Selbst*, Plaintiff implores that GAAP violations should not be assessed on a motion to dismiss. Opp. at 17. Plaintiff neglects to mention that the *Selbst* court later *granted* defendants' motion to dismiss, holding that the plaintiff had not pled particularized facts establishing certain GAAP violations. *Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777, 785 (N.D. Ill. 2006).

7

as ASC 450—the principle that Plaintiff cites nearly twenty times in the CC but omits entirely from its Opposition—calls for disclosure of loss contingencies only where it is "probable" that a liability had been incurred *and* the amount of that liability can be "reasonably estimated," or where there is "at least a reasonable possibility" that a loss may have been incurred. Mot. at 16. Plaintiff does not point to a single particularized fact suggesting AOS had incurred a "loss" that even could be considered for possible disclosure.[4] In any event, these "are not the kind of fixed rules that would qualify as objective standards." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at \*11 (D.N.J. Apr. 27, 2017). The GAAP claims should be dismissed.

### 4. Many of the Challenged Statements Are Non-Actionable Assertions of Corporate Optimism

Plaintiff only addresses two of the dozens of non-actionable statements of corporate optimism identified in Defendants' Motion (Mot. at 18-20), and thus have abandoned the others as a basis for their claims. *See Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at \*3 n.3 (N.D. Cal. June 26, 2018). Plaintiff instead offers sweeping reasons why these statements should be actionable. All of them fail.

Plaintiff first says that Defendants' statements are actionable because they concerned China—a "subject of critical importance." Opp. at 19-20. Plaintiff "conflate[s] the importance" of AOS's Chinese operations with the materiality of *particular statements* about the China business. *ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009). Although the Chinese business is important, that "does not render a particular statement" about China "per se material." *Id.* at 206. To this end, Plaintiff contends in blanket

---

[4] On the contrary, Plaintiff does not mention (much less allege particularized facts contradicting) that: (1) AOS never has repurchased inventory under the relevant bank arrangements; (2) the portion of bank financing subject to the conditions permitting repurchase is immaterial; and (3) UTP must indemnify AOS for any repurchases. *See* CC ¶ 87; Mot. at 17; Ex. 36 at 2.

fashion that the "vast majority" of the statements are "quantifiable," but does not explain how or why this is so. At most, it asserts that comments describing "higher" and "solid" demand are "quantifiable" because "demand was in fact decreasing." Opp. at 20. Plaintiff does not even attempt to "quantify" how demand was any less "solid" than AOS reported; Plaintiff does not challenge *any* of AOS's financial figures. Nor does it plead any particularized facts establishing that demand was "decreasing."[5] In any event, courts consistently have dismissed nearly identical statements to those at issue here (*e.g.*, we have a "clear market advantage," we experienced "solid demand," we have a "thoughtful, a systematic approach to reducing inventories over time") as non-actionably vague at the pleading stage.[6] *See* Mot. at 18-20 (citing cases). Plaintiff does not address any of these cases. *See In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1165 (N.D. Ill. 2004) (dismissing where plaintiff did "not specifically compare any of the statements made by defendants to those dismissed by other courts").

Plaintiff urges it is premature to decide whether the statements are non-actionable. Opp. at 19. Plaintiff ignores countless decisions—including those on which it relies—that dismissed similar statements on a motion to dismiss. *See* Mot. at 18-20; *Midway*, 332 F. Supp. 2d at 1164 (rejecting prematurity argument); *Silverman v. Motorola, Inc.*, 2008 WL 4360648, at *9 (N.D. Ill. Sept. 23, 2008) ("strong balance sheet" and "proven record of growth" dismissed); *Evoqua*, 2020 WL 1529371, at *9 ("best-in-class channels" dismissed). The Court should do the same.

> **5.      Many of the Challenged Statements Are Protected by the Safe Harbor**

Plaintiff only addresses one of the non-actionable forward-looking statements identified in

---

[5] Plaintiff asserts that Defendants take the Challenged Statements out of context. This is strange, considering: (i) Plaintiff littered the CC with partial quotations and mischaracterizations (e.g., Mot. at 17-18); and (ii) Defendants' Appendix A quoted every Challenged Statement in context.

[6] That certain statements were responses to questions does not change the analysis. *See In re HP Sec. Litig.*, 2013 WL 6185529, at *7 (N.D. Cal. Nov. 26, 2013) ("optimistic language, even in the context of answering specific questions" constituted non-actionable puffery).

the Motion, and thus has abandoned the others.  *See Norfolk*, 2018 WL 3126393, at *3 n.3.  As for the one it does address, Plaintiff claims Rajendra's April 27, 2017 statement[7] that there were several "growth drivers underpinning our China business" was not forward looking.  Opp. at 21. Plaintiff can only make its argument by cherry picking a portion of the statement that deprives it of proper context.  Rajendra actually stated, "With several growth drivers underpinning our China business, *we are confident to project an annual growth rate of at least 15% in local currency in 2017*."  App. No. 8.  Rajendra's comment is the quintessential example of "projections," "plans," and "assumptions underlying" those projections and plans that the *PSLRA itself* defines as forward-looking.  *See* 15 U.S.C. § 77z-2(i)(1).  Indeed, Plaintiff's own cited authority found similar language to be forward looking.  *See Evoqua*, 2020 WL 1529371, at *8-9 ("Our future growth will come from both organic sales initiatives and through a systematic M&A process.").  Perhaps more profoundly, Plaintiff ignores that Rajendra's prediction came true—AOS experienced 18% growth in local currency in 2017.  Ex. 14 at 4.

Plaintiff, moreover, does not argue that the detailed, specific cautionary language accompanying all of AOS's forward-looking statements was boilerplate.  Plaintiff instead asserts that the language was not "meaningful" because it did not mention a channel-stuffing scheme. Opp. at 21-22.  This argument fails because, as explained above, Plaintiff has not pled channel stuffing with particularity.  *See supra* at 2-6.  Separately, as Plaintiff's cited authority makes clear, to qualify as "meaningfully cautionary," the PSLRA requires only that the language mention "important factors that could cause actual results to differ from those in the forward-looking statement."  *Silverman*, 2008 WL 4360648, at *12; *see also In re Sawtek, Inc. Sec. Litig.*, 2005

---

[7] Defendants do not argue—as Plaintiff suggests—that the statement regarding "continued strong demand" was forward looking.  Opp. at 21.  Rather, this statement is non-actionable because it is a vague expression of corporate optimism.  Mot. at 19.

WL 2465041, at \*11 (M.D. Fla. Oct. 6, 2005) (rejecting argument that cautionary language was not meaningful because it did not disclose channel stuffing); *Evoqua*, 2020 WL 1529371, at \*8-9 (cautionary language meaningful even though it did not mention channel stuffing).  Here, AOS warned of the exact risks that came to pass—that "a further slowdown in the growth rate of the Chinese economy and/or a decline in the growth rate of consumer spending in China" could cause actual results to differ materially from AOS's projections, and that future performance likely would be negatively impacted by elevated channel inventory in China.  Mot. at 20-21.

Plaintiff also claims that Defendants "made their misrepresentations with actual knowledge" of falsity (Opp. at 22)—but never identifies *which* Defendants allegedly had such knowledge, *what* "actual knowledge" they possessed, *how* they knew the information, or *why* such knowledge contradicted the forward-looking statements at issue.  Plaintiff's conclusory allegations fall far short of establishing actual knowledge of falsity—a stricter standard than scienter.  *See, e.g.*, *NECA-IBEW Pension Fund v. N. Tr. Corp.*, 2013 WL 1290202, at \*9 (N.D. Ill. Mar. 28, 2013).  The forward-looking statements should be dismissed.

### 6.     Many of the Challenged Statements Are Non-Actionable Opinions

Plaintiff argues that "several" of the non-actionable opinions Defendants identified are not actually "opinions."  Opp. at 22.  But Plaintiff only mentions two statements—and thus has abandoned the others.  *See Norfolk*, 2018 WL 3126393, at \*3 n.3.  As to the statements it does address, Plaintiff deletes portions that make clear Defendants were expressing their opinions.  In its Opposition, Plaintiffs quote Rajendra as saying, "I was in China last week" and "the slowdown has to be hitting everybody," and Kita as stating, "you have to assume everybody's kind of in the same" boat.  Opp. at 22.  In response to an analyst question about whether others faced elevated channel inventory, Rajendra *actually* said, "I was in China last week. . . . *We don't know.  We don't really have any data that can say what the other competitors are like in terms of inventories*.  But

11

the slowdown has to be hitting everybody." App. No. 42.  Kita added:  "We don't see the numbers from a share standpoint haven't moved much.  *So as Ajita said, we don't know*, but you have to assume everybody's kind of in the same."  *Id.* No. 43.  The actual answers demonstrate that Rajendra and Kita were expressing opinions—not making "factual statements" as Plaintiff contends.  *See Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).

Plaintiff also asserts in blanket fashion that Defendants' opinions "(i) were not sincerely held, (ii) did not 'fairly align[] with the information in the issuer's possession,' and (iii) omitted facts that 'conflict with what a reasonable investor would take from the statement.'"  Opp. at 23 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015)).  But meeting the *Omnicare* standard "is no small task" (*Omnicare*, 575 U.S. at 194) and Plaintiff has come nowhere close to satisfying it here.  Indeed, Plaintiff does not allege a single *fact* suggesting that any of the three scenarios apply to Rajendra or Kita—only its unsupported *conclusion*.  This is not enough.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017).

### B.      Plaintiff Fails to Plead a "Strong Inference" of Scienter

Plaintiff's Opposition underscores that it failed to plead a "strong inference" of scienter. Plaintiff first argues that "Defendants clearly knew about" the alleged "channel stuffing" because it involved AOS's "most important," "lynchpin customer."  Opp. at 23-24.  This circular argument fails for the same reasons as Plaintiff's falsity claims:  it alleges no particularized facts that AOS was engaged in a channel-stuffing scheme, or that UTP was AOS's "most important customer." *See supra* at 2-7.  But even if Plaintiff had established falsity (it has not), it fails to identify a single fact showing that any of the Individual Defendants knew (or were intentionally reckless) about the alleged wrongdoing.  "[S]cienter and falsity are two distinct elements of a Section 10(b) claim" and "adequately pleading falsity is not a substitute for adequately pleading scienter."  *Ramzan v.*

*GDS Holdings Ltd.*, 2020 WL 1689772, at *5 (S.D.N.Y Apr. 7, 2020). Further, Plaintiff devotes nearly seven pages of its Opposition to its scienter allegations, yet only mentions the Individual Defendants by name once—to describe their stock sales. Opp. at 27-28. The Seventh Circuit has expressly rejected these types of group allegations, and the CC should be dismissed on this ground alone. *See Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 600-01 (7th Cir. 2019) (the "group pleading doctrine is inconsistent with the PSLRA's particularity requirements"). Plaintiff's other scienter allegations are equally deficient.

**Core Operations and Executive Positions.** Plaintiff assumes scienter because the China business "was critical to the Company's overall performance." Opp. at 24. But an "inference of scienter based on the argument that the defendants 'had to be monitoring the data because the numbers were so important' is 'weak at best.'" *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1175 (N.D. Ill. 2019). Plaintiff "cannot simply rest on its suspicion that alarm bells must have been ringing"—it "must plead facts that transform this suspicion into a cogent inference that alarm bells were, in fact, ringing[.]" *Fulton Cty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 601364, at *13 (E.D. Wis. Feb. 18, 2010). The CC pleads no such facts.

Plaintiff also points to Defendants' "focus on" the China business and their "day-to-day management" of inventory levels. Opp. at 24-25. As the Seventh Circuit noted in a similar context, however, there is a "big difference" between knowing about channel-inventory levels and knowing about an improper channel-stuffing scheme. *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). Entirely missing from Plaintiff's allegations is any specific transaction, communication, event, or report showing that any of the Individual Defendants knew of the alleged channel-stuffing scheme (or GAAP violations or that UTP was a material "customer" requiring disclosure). *Spectrum*, 461 F. Supp. 2d. at 1309; *see also Lopes v. Fitbit, Inc.*, 2020 WL 1465932,

13

at *11 (N.D. Cal. Mar. 23, 2020) (to demonstrate scienter under the core operations doctrine, plaintiff "must assert 'particularized allegations' about 'the who, what, where, when, and how regarding each Defendant's access to the relevant information'" that shows fraudulent intent.). Indeed, the CC contains no facts tying *any* Individual Defendant to the "receipt of information or knowledge that would contradict a statement he made during the Class Period." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1166 (E.D. Wis. 2017); *see also Miao*, 2020 WL 996602, at *22 (statements concerning the "transactions-at-issue" did not sufficiently allege that Defendants knew about fraudulent conduct related to those transactions).

**Confidential Witnesses.**  Plaintiff's CW allegations should be disregarded for numerous, independent reasons:  (i) none worked for AOS during the vast majority of the Class Period and thus simply is not positioned to know whether AOS engaged in improper conduct; (ii) none suggests, much less states, that AOS did anything wrong (or inconsistent with its public statements); (iii) the allegations are entirely vague, non-specific, and anecdotal; and (iv) none mentions, knows, or has ever communicated with any of the Individual Defendants, and thus cannot support an inference of scienter.  *See* Mot. at 23-25 (citing cases).

**Stock Sales.**  Plaintiff argues the Individual Defendants' "large and suspicious insider stock sales" support scienter (Opp. at 27-28), but fails to address the fact that the Defendants retained a majority of their shares over the two-year-plus Class Period (Mot. at 25-26).  Plaintiff also claims the broad temporal distance between the stock sales and alleged corrective disclosures is "irrelevant" because the channel-stuffing scheme would not be revealed on any "preordained date."  Opp. at 28 & n.17 (citing *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1185-86 (C.D. Cal. 2007)).  But unlike *Middlesex*—where it was "not inevitable" that the stock-options backdating scheme "would be revealed"—Plaintiff here *specifically argues* that the alleged

14

channel-stuffing scheme was "unsustainable" and AOS was "forced" to reveal it by announcing "disastrous financial results." CC ¶ 7. The huge time gap between the stock sales and alleged corrective disclosures "defeats any inference of scienter." *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 940 (7th Cir. 2018).

### C.     Plaintiff Fails to Plead Loss Causation

The Opposition confirms that none of the three alleged disclosures is "corrective" for loss-causation purposes. Plaintiff concedes that AOS's stock price dropped in *April* 2019 after AOS announced "disastrous financial results" due to "channel inventory build." Opp. at 29. But AOS predicted these disappointing results, based on the same factors, in *January* 2019. Mot. at 29. Because AOS "had already disclosed" the channel-inventory build "which served as the basis for these results," the April announcement "added no new information" that was "publicly revealed for the first time." *Lopes*, 2020 WL 1465932, at *12. It cannot be a corrective disclosure. *See In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 865 (S.D. Tex. 2016).

So too, for the JCap Reports. Plaintiff suggests that JCap did not express its opinions or rely on publicly available information. Opp. at 30. JCap itself disagrees. On the very first page, JCap stated that the report expressed its "opinions" based on information "obtained from public sources." Ex. 33 at 1. Negative spins on publicly available information—particularly from a disreputable short seller like JCap—cannot be corrective. *See, e.g.*, *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 177 (E.D.N.Y. 2019) (third-party reports expressing "negative opinions" based on "publicly available" information are not corrective); *Miller v. PCM, Inc.*, 2018 WL 5099722, at *11 (C.D. Cal. Jan. 3, 2018) (short-seller report based upon public information not a corrective disclosure); Mot. at 29-30.

### III.     CONCLUSION

For the foregoing reasons, the CC should be dismissed.

15

Date: May 8, 2020

Respectfully submitted,

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz (6209701 IL)
Nicholas J. Siciliano (6287387 IL)
Kathryn K. George (6306004 IL)
LATHAM & WATKINS LLP
sean.berkowitz@lw.com
nicholas.siciliano@lw.com
kathryn.george@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

FOLEY & LARDNER LLP
Bryan B. House, WI Bar No. 1022054
Andrew J. Wronski, WI Bar No. 1024029
Nathan D. Imfeld, WI Bar No. 1092934
777 East Wisconsin Street
Milwaukee, WI 53202
Telephone: (414) 271-2400
Facsimile: (414) 297-4900
bhouse@foley.com
awronski@foley.com
nimfeld@foley.com

*Attorneys for Defendants A. O. Smith Corporation, Ajita Rajendra, Kevin Wheeler, and John Kita*

16